**Darrell KELSON, a personal representative of the Estate of Darin Kelson, deceased, Plaintiff and Appellant,**

**v.**

**SALT LAKE COUNTY, a political subdivision of the State of Utah; and Perry Buckner, in a representative capacity only, Defendants and Appellees.**

**No. 870106.**

Supreme Court of Utah.

Dec. 12, 1989.

Kathryn Collard, Steve Russell, Salt Lake City, for plaintiff and appellant.

David E. Yocum, Patricia J. Marlowe, Thomas L. Christensen, Salt Lake City, for defendants and appellees.

ZIMMERMAN, Justice:

Darrell Kelson appeals from a jury verdict denying him any recovery in a wrongful death action brought against Salt Lake County and Deputy Sheriff Perry Buckner. Kelson contends that the trial court erred by (i) instructing the jury that the negligence of Kelson's son, the decedent, should be compared with that of the defendants for purposes of determining liability and damages, (ii) ruling that the decedent's brothers and sisters ·did· not qualify as "heirs" under Utah's wrongful death statute, section 78–11–7 of the Code, and could not therefore testify as to their losses, and (iii) admitting into evidence a stipulation as to the blood alcohol content of the decedent. We affirm.

Darin Kelson was killed during a high-speed chase when his motorcycle collided with a Salt Lake County Sheriff's car after that car had entered an intersection against a red light to block the path of Darin's motorcycle. Appellant Darrell Kelson, Darin's father, brought this wrongful death action pursuant to section 78–11–7 of the Code against Salt Lake County and Deputy Sheriff Perry Buckner, the officer driving the vehicle struck by decedent's motorcycle. At trial, the jury was instructed that it should compare the negligence of the defendants with that of Darin. The jury apportioned the fault twenty-five percent to the defendants and seventy-five percent to the decedent. Judgment was entered for the defendants because under the comparative negligence statute, section 78–27–37 of the Code, if a party is more than fifty percent negligent, he or she is denied recovery.

On appeal, Kelson attacks several of the trial court's legal rulings. We will

describe each ruling and then discuss Kelson's challenges. First, we note the applicable standard of review: a trial court's legal conclusions are accorded no particular deference; we review them for correctness. *E.g., City of West Jordan v. Utah State Retirement Bd.*, 767 P.2d 530, 532 (Utah 1988); *Scharf v. BMG Corp.*, 700 P.2d 1068, 1070 (Utah 1985).

■ The trial court instructed the jury that under Utah's comparative negligence statute, section 78-27-37 of the Code, the negligence of the decedent was to be compared with the negligence of the defendants. If the decedent was found to be more than fifty percent negligent, all recovery was to be denied. *See* Utah Code Ann. § 78-27-37 (1973) (repealed 1986 and reenacted as § 78-27-38). Alternatively, the trial court ruled that even if the comparative negligence statute did not apply to the wrongful death action, the pre-1973 contributory negligence law would apply and operate to deny recovery if the decedent were negligent. Kelson argues that the negligence of the decedent should not impair a wrongful death plaintiff's ability to recover all his or her losses from a negligent defendant. He contends that Utah's comparative negligence statute is not applicable to wrongful death actions and that the pre-1973 contributory negligence law is also inapplicable.

Kelson's challenge requires consideration of the interrelationship between comparative negligence law and wrongful death law in Utah. Before 1973, when comparative negligence was established in Utah by statute, Utah dealt with blameworthy conduct of the tort victim via the common law: those shown to have been contributorily negligent were denied any recovery. Under this regime, a victim who was merely one percent negligent was entirely disqualified from recovering.

Prior to 1973, the right to recover for wrongful death was similarly constricted. Utah's wrongful death statute provided that a plaintiff could recover only if the death was "caused by the *wrongful* act or neglect of another." Utah Code Ann. § 78-11-7 (1986) (emphasis added).[1] We construed this language to mean that a death was "caused" by the "wrongful" conduct of another only if the decedent was free of negligence. Any contributory negligence on the part of the decedent barred the heirs from recovering. *See, e.g., Mingus v. Olsson*, 114 Utah 505, 201 P.2d 495, 499 (1949); *Van Wagoner v. Union Pacific R.R.*, 112 Utah 189, 186 P.2d 293, 303-04 (1947), *modified on other grounds*, 112 Utah 218, 189 P.2d 701 (1948); *Helfrich v. Ogden City Ry.*, 7 Utah 186, 26 P. 295, 296 (1891).

The rationale for this construction of the statute was well stated in *Van Wagoner v. Union Pacific R.R.* There we said:

[W]rongful is used [in the statute] in the sense of wrongful as against the deceased, and does not include those situations where the deceased either solely or proximately contributes negligently to his [or her] own death.... [The statute] grants to the heirs ... a right to proceed against the wrongdoer subject to the defenses available against the deceased, had he [or she] lived and prosecuted the suit.

112 Utah at 209, 186 P.2d at 303-04. The term "wrongful," then, was to be read as a legal conclusion that the decedent could have recovered against the defendant under the then-prevailing tort law.

---

1. Section 78-11-7 provides:
   Death of adult—Suit by heir or personal representative.
   Except as provided in chapter 1, of title 35, when the death of a person not a minor is caused by the wrongful act or neglect of another, his heirs, or his personal representatives for the benefit of his heirs, may maintain an action for damages against the person causing the death, or, if such person is employed by another person who is responsible for his conduct, then also against such other person. If such adult person has a guardian at the time of his death, only one action can be maintained for the injury to or death of such person, and such action may be brought by either the personal representatives of such adult deceased person, for the benefit of his heirs, or by such guardian [§ 78-11-6]. In every action under this and the next preceding section [§ 78-11-6] such damages may be given as under all the circumstances of the case may be just.

In 1973, the legislature abolished the common law contributory negligence defense and made comparative negligence the governing tort principle. That law provided in pertinent part:

Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence or gross negligence resulting in death or injury to person or property, if such negligence was not as great as the negligence or gross negligence as of the person against whom recovery is sought, but *any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering.*

Utah Code Ann. § 78–27–37 (emphasis added). Thus, if an injured party was less than fifty percent negligent, he or she could recover, but the damages would be reduced in proportion to the injured party's negligence. Section 78–27–37 also addressed recovery if the injured party was killed, precipitating a wrongful death action, by providing that "[c]ontributory negligence shall not bar recovery in an action ... to recover damages for negligence or gross negligence resulting in death." *Id.* The question before us is the impact of this 1973 statute on a wrongful death action, a question that this Court has not previously addressed.

Kelson contends that the last-quoted language of section 78–27–37 abrogates the defense of contributory negligence in all wrongful death actions and the language first quoted in the preceding paragraph limits the weighing of proportional negligence of the parties in cases where the "person recovering" is the party responsible for his or her own injury. Of course, in a wrongful death action the "person recovering" is not always one of the parties involved in the tort. Therefore, Kelson argues, the net effect of the 1973 changes is to overrule our pre–1973 case law construing the term "wrongful" in the wrongful death statute and to free a wrongful death plaintiff from the imputation of any negligent conduct of the decedent. The net result is to permit recovery of all damages suffered if the tort-feasor can be shown to have been at all negligent.

We reject this construction of the 1973 law and its impact on wrongful death actions. The wrongful death statute was not altered in 1973. Its wording remains today substantially as it has been since before statehood. If the 1973 legislature had intended to change the meaning of the term "wrongful" in the wrongful death statute, as Kelson suggests, it is reasonable to assume that it would have amended the wrongful death statute and not relied upon ambiguous language in the comparative negligence statute to disavow our decision in *Van Wagoner* and its antecedents. The statement in the comparative negligence act that contributory negligence "shall not bar" a wrongful death recovery can most simply be read as an effort to ensure that the *Van Wagoner* approach to the term "wrongful," as opposed to the result in that case, would continue to be followed. Specifically, that the term "wrongful" would not be interpreted as entombing the common law concept of contributory negligence within the law of wrongful death, but would continue to be read as referring to the current legal standard for determining when a tort victim is barred from recovery by reason of his or her negligent conduct. And after the passage of the comparative negligence legislation, that wrongfulness standard was whether the victim, had he or she survived, would have been barred from recovery in whole or in part under the provisions of section 78–27–37. Under the post–1973 law, as under the pre–1973 law, the wrongful death plaintiff was, in effect, to have imputed to him or her any negligence of the decedent. As the *Van Wagoner* Court said, the heirs have "a right to proceed against the wrongdoer subject to the defenses available against the deceased, had he [or she] lived and prosecuted the suit." 112 Utah at 209, 186 P.2d at 303–04. For these reasons, we reject the interpretation of the comparative negligence statute argued for by Kelson.

■ The second trial court ruling Kelson challenges is the determination that dece-

dent's brothers and sisters could not recover their losses because they were not the decedent's "heirs," as that term is used in the Utah Uniform Probate Code. The wrongful death statute states that claims may be asserted only by or on behalf of the decedent's "heirs." *See* Utah Code Ann. § 78–11–7, *supra* note 1. The term "heirs" is not defined in the wrongful death statute. The trial court held that the term should be defined as it is in the Utah Uniform Probate Code. Utah Code Ann. §§ 75–1–201(17) (Supp.1989), 75–2–103 (1978). Section 1–201(17) of the Probate Code limits "heirs" to those who would receive property under the intestacy statute.[2] Because brothers and sisters would not take in the presence of a living parent under section 2–103 of the Probate Code, the trial court limited recovery to losses suffered by the father alone.[3]

As a practical matter, a line must be drawn limiting the number of eligible wrongful death plaintiffs. Not everyone can have recourse for their emotional losses, as, for example, the decedent's friends. *Cf. Hackford v. Utah Power & Light Co.*, 740 P.2d 1281 (Utah 1987). At the margin, any such limit will appear to operate arbitrarily, denying recovery to some and granting it to others who may, in fact, be less affected. In the present case, the legislature has drawn that line by confining wrongful death actions to "heirs," although it has not defined that word in the statute. Generally, absent express direction to the contrary, we presume that a term of art used in a statute is to be given its usual legal definition. *See State v. Franklin*, 735 P.2d 34, 37 (Utah 1987); *Ward v. Richfield City*, 716 P.2d 265, 266 (Utah 1984); *West Jordan v. Morrison*, 656 P.2d 445, 446 (Utah 1982).

It may be argued that there are profound differences between the two laws, differences that make the mechanical application of the intestacy statute's definition of "heirs" to the wrongful death statute rather absurd. *See* Note, *Decedent's Heirs Under the Utah Wrongful Death Act*, 1979 Utah L.Rev. 77. The Utah wrongful death act is intended to provide a right of action for persons injured by the wrongful killing of another. In contrast, the Utah intestacy laws provide a procedure for dividing up a decedent's estate in the event he or she dies without a will. The procedure is designed to effect the most probable intent of the decedent had he or she left a will without regard, necessarily, for who may be most affected by the death. *Id.* at 82. A reasonable delimitation of the class of persons who should be permitted to show that they have been injured under the wrongful death statute might take into account not only their relationship to, but also the degree of their economic dependency upon, the deceased. *Id.* at 83. Whatever merit there may be to this argument, we cannot ignore the plain language of the

**2.** Section 75–1–201(17) states: "Heirs" means those persons, including the surviving spouse, who are entitled under the statutes of intestate succession to the property of a decedent.

**3.** Section 75–2–103 states:

(1) The part of the intestate estate not passing to the surviving spouse under section 75–2–102, or the entire intestate estate if there is no surviving spouse, passes as follows:

(a) To the issue of the decedent by representation.

(b) If there is no surviving issue, to his [or her] parent or parents equally.

(c) If there is no surviving issue or parent, to the issue of the parents or either of them by representation.

(d) If there is no surviving issue, parent, or issue of a parent, but the decedent is survived by one or more grandparents or issue of grandparents, half of the estate passes to the paternal grandparents if both survive, or to the surviving paternal grandparent, or to the issue of the paternal grandparents if both are deceased, the issue taking by representation; and the other half passes to the maternal relatives in the same manner; but if there be no surviving grandparent or issue of grandparent on either the paternal or the maternal side, the entire estate passes to the relatives on the other side in the same manner as the half.

(e) If there is no surviving issue, parent or issue of a parent, grandparent or issue of a grandparent, then the entire estate passes to the next kin in equal degree, excepting that when there are two or more collateral kindred in equal degree, but claiming through different ancestors, those who claim through the nearest ancestor must be preferred to those claiming through an ancestor more remote.

statute. The fact that the result in some circumstances may be to unreasonably restrict the class of persons who can bring a wrongful death action is an argument for amendment of the statute, not for our ignoring its words. The trial court's ruling on this question is affirmed.

The final ruling attacked by Kelson is one admitting into evidence a stipulation between counsel for Kelson and counsel for the county as to the decedent's blood-alcohol content based on a post-mortem report prepared by the state medical examiner. Kelson, throughout the proceedings, consistently disputed the validity of the report. Kelson's initial counsel agreed to the stipulation long before trial without Kelson's express consent. On the eve of trial, Kelson's second attorney moved to suppress the stipulation, contending that it had not been agreed to by Kelson. The trial court denied the motion on grounds that the stipulation had been knowingly entered into by Kelson's first counsel and that to suppress it on the eve of trial would prejudice the defendants, who had relied on the stipulation and had not prepared to put on any other evidence of intoxication. Kelson claims that the trial judge abused his discretion by admitting the stipulation into evidence.

■ We cannot consider the merits of Kelson's claim. Utah Rule of Evidence 103 provides that an "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." For us to find that an error has affected the substantial rights of a party, we must consider the impact of that error in the context of the whole proceeding. *State v. Speer*, 750 P.2d 186, 189 (Utah 1988); *see Matter of Estate of Hock*, 655 P.2d 1111, 1117 (Utah 1982); *Stagmeyer v. Leatham Brothers, Inc.*, 20 Utah 2d 421, 426, 439 P.2d 279, 282 (1968). In taking his appeal, Kelson failed to designate the trial transcript as part of the appellate record. In the absence of a transcript, it is impossible for us to ascertain whether, assuming an error was committed, a "substantial right" has been affected. *See* R.Utah S.Ct. 24(a)(7), (9), 24(f);

*Fackrell v. Fackrell*, 740 P.2d 1318, 1319 (Utah 1987); *Trees v. Lewis*, 738 P.2d 612, 612–13 (Utah 1987). Therefore, we must assume the regularity of the proceedings below and the harmlessness of any error.

For the foregoing reasons, we affirm the judgment below.

HALL, C.J., and DURHAM, J., concur.

HOWE, Associate Chief Justice (concurring):

I concur but desire to separately state my reasons for holding that the trial court did not abuse its discretion in refusing to set aside the stipulation entered into between Kelson's initial counsel and defendants' counsel as to the decedent's blood alcohol content. The decedent's high level of blood alcohol was probably the most damning evidence presented against plaintiff, and counsel for defendants at the trial stressed the decedent's intoxication as being the principal cause of his death. I therefore do not have any doubt that a "substantial right" of plaintiff was affected by the court's ruling on the stipulation. Utah R.Evid. 103.

I prefer to place my concurrence on this issue on the ground that although plaintiff's motion to set aside the stipulation was made several months prior to trial, plaintiff's counsel was unable to assure the trial court that all of the necessary witnesses relating to the drawing and examining of the decedent's blood were still available to testify at trial or to be deposed. The trial judge noted that there was an indication in the record that the stipulation was entered into at a time when defense counsel had expressed his intention to take the deposition of two persons who could establish the accuracy and authenticity of the blood alcohol test. It was approximately eighteen months after the stipulation was entered into before plaintiff's present counsel, upon discovering the stipulation, moved to set it aside. She was unable, however, to assure the court that the witness who prepared the written certification of the test was still alive and available.

In view of this uncertainty, I cannot conclude as a matter of law that the trial court abused its discrètion in denying plaintiff's motion. In denying the motion, the trial court did state that although the stipulation would be admitted into evidence, "this does not prevent other evidence coming in to challenge the report, such as that the wrong vial of blood was tested, or that it was drawn from the wrong person." This ruling left plaintiff free to attack the report of the testing. Under these facts, the trial court's refusal to set aside the stipulation cannot be seriously faulted.

STEWART, J., concurs in the concurring opinion of HOWE, Associate C.J.