Shirley **TURNBAUGH**, as Personal Representative of the Estate of Le Roy Turnbaugh, for the Benefit of the **HEIRS OF Le Roy TURNBAUGH,** Plaintiff and Appellant,

v.

Evan **ANDERSON** and Red Dome, Inc., a Utah corporation, Defendants and Appellees.

No. 880501–CA.

Court of Appeals of Utah.

May 31, 1990.

---

D.M. Amoss, Salt Lake City, for plaintiff and appellant.

Dexter L. Anderson, Fillmore, for defendants and appellees.

Before GREENWOOD, JACKSON and ORME, JJ.

## OPINION

GREENWOOD, Judge:

Plaintiff Shirley Turnbaugh (Turnbaugh) appeals from a trial court's verdict denying her recovery in a wrongful death action brought against defendants Evan Anderson and Red Dome, Inc. for the death of her husband, Le Roy Turnbaugh. We affirm.

On July 6, 1983, decedent was operating a model 175A Michigan front-end loader to strip overburden from a cinder deposit on a mining claim located near Fillmore, Utah. Decedent was killed when the loader rolled backwards into an eighteen to twenty foot open-pit excavation. Based on tracks made by the loader, decedent apparently drove the loader away from the area he was working, travelling up a twenty-foot road towards a refueling truck. The loader then evidently turned off the road at a ninety degree angle and backed downhill over the edge of the pit, overturning and crushing

decedent. The loader had run out of fuel, which rendered the loader's brakes and steering inoperable.

The open-pit excavation is one of several hundred unfenced cinder mines situated on approximately 680 acres of claims owned by Red Dome, Inc. At the time of the incident, Red Dome, Inc. and Sorenson Brothers were parties to an operating agreement, whereby Sorenson Brothers conducted mining operations on the claims and paid Red Dome, Inc. a royalty.

Two days prior to the incident, Anderson, owner of the loader, loaned it to Don Peterson, decedent's employer. Anderson testified at trial that he did not know that decedent was going to operate the loader at the claim, but assumed that Peterson was going to operate the loader himself. The brakes on this model of loader were air brakes, which, since they operated from air pressure, would not operate when the loader ran out of fuel. Also, the steering was inoperable unless the engine was running to provide hydraulic pressure. As part of its original design, the loader did not have a fuel gauge.

When he loaned the loader to Peterson, Anderson did not tell Peterson that there was no fuel gauge or that the brakes would fail and the steering lock when the loader was out of fuel. Anderson testified at trial that he assumed Peterson was aware of those attributes of the loader from his previous experience in using the machine. Peterson had used the loader approximately twenty times prior to the accident, and had previously owned a similar loader with the same design attributes.

Decedent had been on the mining claims several times before, hauling overburden in a truck from the mine pits. He had operated the loader in question on the claim the previous day and on the day of the accident. Peterson provided a truck with diesel fuel and a pump at the claim, to be used by the loader operator to transfer fuel from the truck to the loader when needed. Peterson testified that he informed decedent about the fuel truck prior to the accident.

Anderson retrieved the loader from the pit after the accident, refueled it, and replaced the damaged radiator, battery, and body parts. He testified that the loader then worked satisfactorily, including the brakes and steering.

Turnbaugh brought a wrongful death action against Red Dome, Inc. and Anderson for the death of decedent. On April 4, 1988, a bench trial was held. Following a memorandum decision, the trial court entered findings of fact and conclusions of law that there was no negligence by Anderson and no negligence or nuisance by Red Dome, Inc. relating to the death of decedent. The trial court subsequently entered judgment in favor of Red Dome, Inc. and Anderson.

On appeal, Turnbaugh contends that the trial court erred in (1) determining that Red Dome, Inc., a non-operating mineral interest owner, is not subject to liability for nuisance; (2) failing to make findings as to whether a nuisance actually existed; (3) determining that Utah Code Ann. § 40–5–1 (1988) does not apply to open-pit excavations; and (4) finding there was no evidence that the loader was defective or improperly maintained.

## STANDARD OF REVIEW

On appeal, we review a trial court's legal conclusions for correctness, giving no particular deference to the trial court. *Kelson v. Salt Lake County,* 784 P.2d 1152, 1154 (Utah 1989). "To successfully attack findings of fact, an appellant must first marshal all the evidence supporting the findings and then demonstrate that, even if viewed in the light most favorable to the trial court, the evidence is legally insufficient to support the findings." *Doelle v. Bradley,* 784 P.2d 1176, 1178 (Utah 1989). Findings of fact "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Utah R.Civ.P. 52(a). Further, a finding of fact by a trial court is "clearly erroneous" only if it is against the clear weight of the evidence. *Doelle,* 784 P.2d at 1178; *Reid v. Mutual of Omaha Ins. Co.,* 776 P.2d 896, 899–90 (Utah 1989).

## NUISANCE

We first address Turnbaugh's claims that Red Dome, Inc. is liable under a nuisance theory and that the trial court erred by failing to conclude nuisance had been shown. Utah Code Ann. § 76-10-801 (1988) defines nuisance and the penalty therefor as follows:

(1) A nuisance is any item, thing, manner, condition whatsoever that is dangerous to human life or health or renders soil, air, water, or food impure or unwholesome.

(2) Any person, whether as owner, agent, or occupant who creates, aids in creating, or contributes to a nuisance, or who supports, continues, or retains a nuisance, is guilty of a class B misdemeanor.

The trial court determined that since Red Dome, Inc. only collected royalties from those that mined the claims and had no control over their operations, it was not liable for any alleged nuisance created by the mining companies that worked the claims. Turnbaugh argues that even though Red Dome, Inc. is a non-operating mineral interest owner, it is still subject to liability for nuisance in Utah under section 76-10-801.

Section 76-10-801 encompasses two types of nuisance developed under the common law: public and private nuisance. *See, e.g., Helmkamp v. Clark Ready Mix Co.*, 214 N.W.2d 126, 129 (Iowa 1974) (state statutory enumerations do not modify the common-law doctrine of nuisances); *see also* Restatement (Second) of Torts § 821A (1979). Thus, the definition of nuisance in section 76-10-801 includes acts or conditions that are commonly classed as public or private nuisances.

Turnbaugh does not clearly specify whether she proceeded under a public or private nuisance theory. Therefore, we shall address both. Public nuisance is codified at Utah Code Ann. § 76-10-803 (1990) and states in pertinent part:

(1) A public nuisance is a crime against the order and economy of the state and consists in unlawfully doing any act or omitting to perform any duty, which act or omission either:

(a) Annoys, injures, or endangers the comfort, repose, health, or safety of three or more persons....

. . . .

(d) In any way renders three or more persons insecure in life or the use of property.

(2) An act which affects three or more persons in any of the ways specified in this section is still a nuisance regardless of the extent of annoyance or damage inflicted on individuals is unequal.

The Utah Supreme Court has defined a public nuisance as affecting "an interest common to the general public, rather than peculiar to one individual, or several." *Solar Salt Co. v. Southern Pac. Transp. Co.*, 555 P.2d 286, 289 (1976) (quoting W. Prosser, Law of Torts 606).

We find no showing of a public nuisance in this case. There is no evidence that the pit was an unreasonable interference with a right common to the general public. Turnbaugh's contention that the mining claim in some areas was five to six feet from a public highway falls short in establishing that the mining claims were dangerous to the public generally or that the mining claims were being used to annoy, injure, or endanger the comfort, repose, health, or safety of three or more persons.

A private nuisance is generally defined as a substantial and unreasonable nontrespassory interference with the private use and enjoyment of another's land. *Sanford v. University of Utah*, 26 Utah 2d 285, 488 P.2d 741, 744 (1971); *Hendricks v. Stalnaker*, 380 S.E.2d 198, 200 (W.Va. 1989); Restatement (Second) of Torts § 821D (1979). An action for a private nuisance may rest on conduct that is intentional and unreasonable, negligent or reckless, or that results in abnormally dangerous conditions or activities in an inappropriate place. *Sanford*, 488 P.2d at 745; Restatement (Second) on Torts § 822. A private nuisance action "has traditionally been restricted to invasions of interests in the use and enjoyment of land, and while a possessor of land is allowed to recover

incidental damages for harms to his person or chattels in an action for private nuisance, the action is not available for the protection of those interests to a person who has no property rights or privileges in land." *Solar Salt Co.*, 555 P.2d at 290 (Maughan, J. dissenting).

As Prosser points out, "[t]he essence of a private nuisance is an interference with the use and enjoyment of land.... And without it, the fact of personal injury, or of interference with some purely personal right, is not enough for such a nuisance." W. Prosser & W. Keeton, Prosser and Keeton on Torts 619 & n. 1 (1984); *see also Instítoris v. City of Los Angeles*, 210 Cal. App.3d 10, 258 Cal.Rptr. 418, 424 (Dist.Ct. 1989) (a private nuisance can support recovery only for harm to a property interest, not for personal injury). For example, the Georgia Court of Appeals determined that a complaint seeking damages based on a business invitee's slip and fall on defendant's premises failed to state a claim for private nuisance where there was no allegation of any invasion of plaintiff's interest in use and enjoyment of his land. *Johnson v. Georgia Kraft Co.*, 167 Ga.App. 585, 307 S.E.2d 103, 104 (1983); *see also Mandell v. Pivnick*, 20 Conn.Supp. 99, 125 A.2d 175, 176 (Super.Ct.1956) (where plaintiff was injured by defectively installed awning on defendant's building, the court held that no private nuisance was pleaded because there was no allegation of any interference with plaintiff's rights in land).

■ Turnbaugh asserted no property interest affected by the alleged nuisance. Therefore, she cannot bring an action under a private nuisance theory.

### SECTION 40–5–1 and NUISANCE PER SE

■ We next address Turnbaugh's argument that Red Dome, Inc. violated Utah Code Ann. § 40–5–1 (1988), which states:

The owner, lessee or agent of any mine who by working such mine has caused, or may hereafter cause, the surface of the public domain, or of any highway, or other lands, to cave in and form a pit or sink into which persons or animals are likely to fall shall cause such pit or sink to be filled up, or to be securely inclosed with a substantial fence at least four and one-half feet high....

Although Turnbaugh does not state so, her argument apparently rests on the doctrine of nuisance per se. The Utah Supreme Court has stated that

[w]hen the conditions giving rise to a nuisance are also a violation of a statutory prohibition, those conditions constitute a nuisance per se, and the issue of the reasonableness of the defendant's conduct and the weighing of the relative interests of the plaintiff and defendant is precluded because the Legislature has, in effect, already struck the balance in favor of the innocent party.

*Branch v. Western Petroleum, Inc.*, 657 P.2d 267, 276 (Utah 1982).

The trial court's memorandum decision found, however, that section 40–5–1

does not apply to open pit excavations, such as the one at issue herein, that are relatively shallow and conspicuous to the reasonably prudent person. Furthermore, this statute was designed to protect unknowing persons or livestock from running afoul of hazards created by underground mining activities and not necessarily to safeguard those working about them that are or should be cognizant of their dangers, if any.

We agree. The statutory language itself speaks of a "cave in" and resultant formation of a pit or sink. Furthermore, since these excavation pits are in the process of being mined, as was the pit in question, it would be unreasonable to require Red Dome, Inc. to install a fence around the pit to prevent someone from falling in it. Therefore, Turnbaugh cannot recover under a theory of per se nuisance.

### NEGLIGENCE

■ We next address Turnbaugh's negligence claim against Anderson. Turnbaugh attacks the trial court's conclusion that there was no evidence that the loader operated by decedent was defective or improperly maintained at the time of his death, by

arguing that (1) Anderson's testimony that the loader was properly maintained lacked credibility since he testified on his own behalf; and (2) Anderson's testimony was contradicted by Mike Haverson, a former employee of Anderson, who allegedly testified about Anderson's questionable maintenance of the loader.

We find that Turnbaugh has failed to meet her burden to marshal the evidence in support of the trial court's findings and demonstrate that the evidence supporting the findings is legally insufficient. Since her brief presents the conflicting evidence in a light most favorable to her position and largely ignores the contrary evidence, we do not disturb the trial court's findings. *Doelle*, 784 P.2d at 1178; *Ashton v. Ashton*, 733 P.2d 147, 150 (Utah 1987).

In any event, Turnbaugh's points are without merit and the challenged findings are not clearly erroneous. Anderson testified at length regarding the sound working condition of the loader prior to and after the accident. The trial court obviously judged Anderson's testimony credible. Further, Haverson's testimony is attenuated since he quit working for the mines a year before the loader in question was purchased and was experienced with loaders of a different model than the loader in question.

■ Finally, we deal with Turnbaugh's argument that Anderson was negligent in failing to warn either Peterson or decedent of the alleged inherent dangers of the loader. "In cases where the alleged negligence consists of a failure to act, the person injured by another's inaction must demonstrate the existence of some special relationship between the parties creating a duty on the part of the latter to exercise such due care in behalf of the former." *DCR Inc. v. Peak Alarm Co.*, 663 P.2d 433, 435 (Utah 1983). We find that Anderson had no duty to warn decedent regarding the mechanical functions of the loader since he did not have any kind of relationship with decedent, nor did he know or have reason to know or foresee that decedent would operate the loader. Anderson believed only Peterson would operate the loader. Further, since Anderson knew that Peterson was very familiar with the loader, having used it several times previously and having owned a similar loader, Anderson was under no obligation to warn Peterson of the mechanical functions of the loader.

Affirmed.

JACKSON and ORME, JJ., concur.