UTAH DEPT. OF SOCIAL SERVICES
and Karen Adams, Plaintiffs
and Appellants,

v.

Howard H. ADAMS, Defendant
and Appellee.

No. 890690–CA.

Court of Appeals of Utah.

Feb. 13, 1991.

Rehearing Denied Feb. 13, 1991.

R. Paul Van Dam, Atty. Gen., Blaine R. Ferguson, Asst. Atty. Gen. (argued), Salt Lake City, for plaintiffs and appellants.

Scott W. Holt (argued), Layton, for defendant and appellee.

## AMENDED OPINION

Before GARFF, JACKSON and ORME, JJ.

ORME, Judge:

The Department of Social Services appeals an order of the district court approving what the Department regards as an "in-kind" support agreement between defendant Howard Adams and his former wife, Karen Adams,[1] and awarding attorney fees against the Department. We affirm and award defendant attorney fees incurred on appeal.

## FACTS

The Adamses were divorced in 1979. They had two minor children from the marriage. The divorce decree ordered defendant to pay $100 per month per child in child support. In mid–1988, Mrs. Adams and her two children began living in a home owned by defendant, the undisputed fair rental value of which was $350 per month. Defendant and Mrs. Adams entered into a written agreement providing

---

**1.** While the Department formally acts in the stead of Mrs. Adams, she is not a party to this appeal and did not support the Department's position in the proceedings below.

that defendant was relieved from physically paying the $200 per month in child support, in exchange for which Mrs. Adams and the children could live in the home rent-free. Not only did this simplify the accounting procedure between the parties, it also effectively provided Mrs. Adams and the children a substantial bonus in the value of support provided by defendant. This agreement was filed with the clerk of the court which originally granted the divorce, although no formal modification of the divorce decree was sought or entered at that time.

Mrs. Adams applied for Aid to Families with Dependent Children through the Utah Department of Social Services in March 1989. She qualified for and began to receive public assistance, whereupon the Department succeeded to her right to receive child support payments. *See* Utah Code Ann. § 62A–9–121 (1989). Among the comprehensive material in support of her application, she provided the Department with a copy of the parties' agreement. It is unclear whether the Department evaluated her eligibility for assistance with reference to her receiving $200 a month or $350 a month from defendant. In any event, the Department registered no objection to or concern with the arrangement at that time and the parties continued to honor it. Some months later, the Department determined it was not bound by the arrangement, since the divorce decree had not been formally modified. The Department began a series of maneuvers to collect "unpaid" child support from defendant for the months during which the rental agreement relieved him of the need to pay cash support.

Defendant claimed he had more than fulfilled his support obligations through provision of the home, rent-free. He unsuccessfully attempted to resolve the dispute with an investigator from the Department. Defendant, when confronted with further enforcement action, obtained an order to show cause directed against the Department. Upon recommendation of the domestic relations commissioner and after two hearings before the court, the district court ordered the Department to recognize the validity of the rental agreement and to cease its efforts to collect the "arrearage" from defendant. The court found the Department had acted in bad faith in attempting to collect child support already paid, and in threatening garnishment of income and tax refunds, and ordered the Department to pay defendant's attorney fees and costs.

### VALIDITY OF AGREEMENT

■ The Department asserts that the power to modify a decree of divorce rests solely with the courts, Utah Code Ann. § 30–3–5 (1990); *Karren v. State Dept. of Social Servs.*, 716 P.2d 810, 813 (Utah 1986), and that the agreement between defendant and Mrs. Adams is void as a usurpation of that power. The Department also claims the agreement is violative of Utah Code Ann. § 62A–11–307.2(1)(d) (1989), which bars public assistance recipients from entering into agreements which relieve or settle child support obligations without the written consent of the Office of Recovery Services.[2] The Department claims that the agreement was therefore without legal effect, at least as against the Department, until incorporated into a modified decree by the court in proceedings to which it was a party. We agree that the power to modify a divorce decree is vested solely in the courts. *Starks v. State Dept. of Social Servs.*, 750 P.2d 199, 200 (Utah Ct.App.1988). We take no issue with the Department's prerogatives where individuals set about to compromise or reduce support amounts on their own. However, we reject the Department's claim that the Adamses ran afoul of these doctrines.

Section 62A–11–307.2(1)(d) provides: "The [public assistance recipient] may not enter into any agreement with an obligor that relieves him of any duty or responsibility of support or purports to settle past, present, or future obligations either as settlement or prepayment without the office's

---

**2.** The Office of Recovery Services is an enforcement arm of the Department of Social Services and those responsible for the actions taken against defendant were employees of that office.

written consent."[3] In its order, the trial court stated that "the agreement was a reasonable agreement and not an attempt to defraud [the Department] or avoid child support, the rental value [of the home] being equal or greater than the child support Defendant was required to pay." We agree.[4]

Nothing in the rental agreement suggested that defendant was settling or being relieved of any support obligation. Quite the contrary, defendant voluntarily accepted a support level above what he was required to pay. The rental agreement is most fairly viewed as, first, a simple device for easing the accounting between defendant and Mrs. Adams, who would otherwise be obliged to swap checks monthly, and second, a commendable, voluntary undertaking on defendant's part to provide *more* than the required support to his children for an indefinite period of time, i.e., for so long as they lived in the home he provided. No modification of substantive obligations under the divorce decree occurred. Defendant was relieved of no support obligations; no support arrearage or future obligation was compromised.

The Department's curious position, as conceded at oral argument, is essentially that an arrangement whereby defendant wrote a $200 check to Mrs. Adams (or the Department) in fulfillment of his child support obligation, and Mrs. Adams in turn wrote a check to defendant for $350 in rent, would be satisfactory to the Department. Of course, if the Department prevailed in its position, Mrs. Adams and the children, absent further concession by defendant, would have $150 per month less on which to live, or would be required to live in less expensive and presumably less comfortable accommodations. Vindication of the bureaucratic urges for uniformity and adherence to "the rules" is not an adequate basis on which to premise such economic absurdity. In an area of the law where the "best interests of the children" doctrine properly drives most decisions, *see, e.g., Hogge v. Hogge,* 649 P.2d 51, 54 (Utah 1982); *DeBry v. DeBry,* 27 Utah 2d 337, 496 P.2d 92, 93–94 (1972); *Curtis v. Curtis,* 789 P.2d 717, 719 (Utah Ct.App. 1990), it is perplexing that the Department persists in attempting to upset a workable and working arrangement which benefitted all concerned.[5]

## ATTORNEY FEES

■ Attorney fees are awarded to the prevailing party where an action is filed, or a defense is raised, without merit and in bad faith. Utah Code Ann. § 78–27–56 (1990). The district court awarded defendant $476 in attorney fees, stating in its conclusions of law that the Department acted in "bad faith from the beginning to the end." The court supported its conclusion with findings of fact, including that

---

3. On April 24, 1989, Utah Code Ann. § 62A–11–307.2(1)(d) (1989), replaced Utah Code Ann. § 62A–11–304(4) (1988), which had replaced Utah Code Ann. § 78–45b–3(4) (1953). Each of these statutes contained substantially similar language.

4. We hasten to add that the instant case is atypical and in no way do we lend general support to efforts to satisfy support obligations "in kind." The agreement here concerned property that was easily valued and the children clearly received a significant surplus. Mrs. Adams had bargained for and acquiesced in the agreement and the court and the Department had been notified of the arrangement. Nothing in this opinion should deter the Department from taking the position it took here, albeit unjustifiably, in the more common situation where a support obligor *unilaterally* drops off second-hand clothes, canned fruit, or a pair of skis and then purports to deduct his or her view

of the value thereof from support payments. Indeed, it may safely be said that the Department's fundamental position is sound—it just missed, by a mile, the case in which to seek validation of that position.

5. The federal-state regulatory scheme concerning the Aid to Families with Dependent Children program is complex. The Department's antipathy for an on-going "exception" from the usual program requirements for the Adamses is understandable. While we endorse the trial court's disapproval of the Department's effort to require defendant to pay his support obligation twice for past months, nothing in this opinion would preclude the Department from requiring, *prospectively,* and so long as not inconsistent with the divorce decree as properly modified, that defendant satisfy his support obligation in a manner designed to generate an accounting "paper trail" more in keeping with AFDC requirements.

the Department notified defendant it was proceeding against his tax refund after the court had unequivocally indicated its position that defendant would be granted relief against the Department. The court further found "[t]hat this matter is now at a third time before this Court and all through this process, the State has insisted that it was going to collect the child support from Defendant irregardless of what the Court has indicated in this matter." The court also took a jaundiced view of the Department's decision to go after defendant for back support it determined was due some eight months after it first learned of the parties' arrangement, during all of which time defendant faithfully performed his obligation thereunder with no inkling of the Department's position. Nor did the Department score points with the court by its decision to acquaint defendant with its position via a summary enforcement notice rather than a polite letter or phone call suggesting a different approach in the future.

■ The Department challenges the court's findings and conclusions to the effect that it acted in bad faith in pursuing collection efforts against defendant and in pursuing its defenses in the order to show cause proceeding initiated by defendant. While we accord no particular deference to a trial court's conclusions of law, *Kelson v. Salt Lake County*, 784 P.2d 1152, 1154 (Utah 1989), a challenge to findings of fact must show that the evidence, viewed in a light most favorable to the trial court, is legally insufficient to support the contested finding. *E.g., Scharf v. BMG Corp.*, 700 P.2d 1068, 1070 (Utah 1985); *Turnbaugh v. Anderson*, 793 P.2d 939, 941 (Utah Ct.App. 1990). The challenging party must marshal all the *supporting* evidence and demonstrate its insufficiency. *Id.*

■ The Department has attempted to excuse its persistence in the face of the trial court's contrary indications by ascribing guilt to bureaucratic computer programs generating form letters and to the fact that one departmental branch, the Office of Recovery Services, was not privy to information known to another branch of

the Department, the Office of Assistance Payments, which processed Mrs. Adams' application for assistance. However, the Department has failed to marshal all of the evidence *supporting* the bad faith findings, much less has it demonstrated that such evidence is legally insufficient to support the trial court's finding. An award of attorney fees premised on a finding of bad faith is, to an extent, a matter within the discretion of the trial court, *Canyon Country Store v. Bracey*, 781 P.2d 414, 421 (Utah 1989), and appellate deference is owed to the trial judge who actually presided over the proceeding and has first-hand familiarity with the litigation. We find no abuse of that discretion in the instant case and affirm the court's award of attorney fees.

■ The general rule is that when a party who received attorney fees below prevails on appeal, the party is also entitled to fees reasonably incurred on appeal. *E.g., Management Servs. v. Development Assocs.*, 617 P.2d 406, 408–09 (Utah 1980) (applying doctrine where basis for award of fees was contractual provision); *Burt v. Burt*, 799 P.2d 1166, 1171 (Utah Ct.App. 1990) ("Ordinarily, when fees in a divorce were awarded below to the party who then prevailed on appeal, fees will also be awarded to that party on appeal."); *Martindale v. Adams*, 777 P.2d 514, 518 (Utah Ct.App.1989) (applying doctrine where basis for award of fees was mechanic's lien statute). *Cf. Taylor v. Estate of Taylor*, 770 P.2d 163, 173 n. 18 (Utah Ct.App.1989) (where basis for award of fees affirmed on appeal was Utah R.Civ.P. 11, fees incurred on appeal not awarded, although general rule was noted by court, in view of peculiarities of case, including that "defendants have given only cursory treatment in their brief to an analysis of Rule 11 as amended" and that court's "resolution of this aspect of the appeal is essentially a product of [the court's] own efforts rather than defendants' labors for which additional compensation ought to be forthcoming"). Moreover, an appeal brought from an action which is properly determined to be in bad faith is necessarily frivolous under Utah

**1198**

R.App.P. 33.[6] Here, the Department wholly failed to properly challenge the findings upon which the bad faith determination was premised. Accordingly, under the general rule, as bolstered by Rule 33, defendant is entitled to an award of attorney fees reasonably incurred on appeal and we remand for calculation of those fees.

CONCLUSION

The arrangement established by the parties' agreement did not modify or relieve defendant of his support obligations, which he has continually fulfilled. The Department is not entitled to recover "unpaid" support because no support owed by defendant has gone unpaid. The Department has failed to demonstrate that the trial court's award of attorney fees is contrary to law. The order of the district court is affirmed, with remand to determine the amount of attorney fees which have been reasonably incurred by defendant on appeal.

GARFF and JACKSON, JJ., concur.

---

6. While an action in bad faith is also, necessarily, an action which is frivolous, it does not follow that a frivolous action is an action in bad faith. *See, e.g., Cady v. Johnson,* 671 P.2d 149, 151–52 (Utah 1983).