**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff and Appellee,**

v.

**John L. CLYDE and Dawnette Clyde, Defendants and Appellants.**

No. 950223.

Supreme Court of Utah.

July 19, 1996.

---

Ray Phillips Ivie, David N. Mortensen, Provo, for plaintiff.

Thomas L. Howard, Park City, for defendants.

ZIMMERMAN, Chief Justice:

John and Dawnette Clyde (the "Clydes") appeal from the district court's grant of summary judgment in favor of State Farm Mutual Automobile Insurance Company ("State Farm"). The district court concluded that the Clydes are not entitled to maintain an action under section 78–11–6 of the Utah Code for the wrongful death of their unborn grandchild. We affirm.

The relevant facts are not disputed. On July 22, 1993, the Clydes' minor daughter Amber was killed in a car accident when an oncoming vehicle driven by Viola May Barker veered from its lane and collided head-on with the vehicle in which Amber was riding. At the time of her death, Amber was pregnant, and her unborn child was also killed in the accident. Amber was not married, and the father of her unborn child is unknown.

The Clydes filed a claim against Barker's insurer, Allstate Insurance Company ("Allstate"), for the wrongful deaths of both Am-

ber and her unborn child. Although Allstate paid the Clydes the limits of Barker's policy for both deaths, the Clydes asserted that their damages exceeded those limits. Accordingly, the Clydes sought to recover benefits from their own automobile insurance company, State Farm, under a policy provision requiring State Farm to "pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle." State Farm agreed to pay the Clydes $50,000 for Amber's death but refused to pay for the death of her unborn child.

Faced with continuing demands, both for coverage and for arbitration of the dispute, State Farm brought this action, seeking a declaratory judgment as to whether the Clydes were entitled to underinsured benefits for the wrongful death of Amber's unborn child. State Farm moved for summary judgment, arguing that the Clydes were not "legally entitled" to maintain an action for the wrongful death of Amber's unborn child and that therefore they were not entitled to underinsured benefits. State Farm argued that section 78–11–6 of the Code[1] creates and limits any cause of action the Clydes might have and that by its terms, only a parent or guardian of a minor child may maintain an action for the child's wrongful death. Because the Clydes were not parents or guardians of Amber's unborn child, they could not maintain an action for her wrongful death. The district court agreed and granted State Farm's motion.

■ The Clydes appeal, claiming alternatively that (i) they are entitled to maintain an action under section 78–11–6, and (ii) they can recover as the heirs of Amber's unborn child under section 78–11–12.[2] We address only the Clydes' first claim of error because they did not raise the possibility of recovery under section 78–11–12 before the district

court and have therefore waived that issue. *See Crookston v. Fire Ins. Exch.,* 817 P.2d 789, 806 n. 22 (Utah 1991) (citing *State v. Anderson,* 789 P.2d 27, 29 (Utah 1990)).

■ We first state the applicable standard of review. Summary judgment is appropriate only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c); *K & T, Inc. v. Koroulis,* 888 P.2d 623, 626–27 (Utah 1994); *West v. Thomson Newspapers,* 872 P.2d 999, 1003–04 (Utah 1994); *accord Society of Separationists, Inc. v. Whitehead,* 870 P.2d 916, 920 (Utah 1993).

■ At the outset, we note that "the right of action to recover damages for death is not a common-law right, but is one created by statute, and hence the law creating the right can also prescribe the conditions of its enforcement." *Parmley v. Pleasant Valley Coal Co.,* 64 Utah 125, 228 P. 557, 560 (1924). Because the legislature has authorized only the "parent or guardian" of a minor child to maintain an action for the child's wrongful death, the Clydes may not maintain an action unless they qualify as the parents or guardians of Amber's unborn child. *Cf. Kelson v. Salt Lake County,* 784 P.2d 1152, 1155–57 (Utah 1989) (holding that decedent's brothers and sisters were not decedent's "heirs" and therefore could not maintain action under statute authorizing heirs to maintain action for adult's wrongful death).

■ The Clydes do not contend that they were the natural or adoptive parents of Amber's unborn child or that they had been validly appointed her guardian. Rather, the Clydes assert that because they provided Amber's, and therefore her unborn child's, sole means of support, they stood in loco parentis to the unborn child and should be treated as de facto parents or guardians under section 78–11–6.

1. Section 78–11–6 provides:

> [A] parent or guardian may maintain an action for the death or injury of a minor child when the injury or death is caused by the wrongful act or neglect of another. Any civil action may be maintained against the person causing the injury or death. . . .

Utah Code Ann. § 78–11–6.

2. Section 78–11–12 provides in relevant part:

> (1)(a) Causes of action arising out of personal injury to the person or death caused by the wrongful act or negligence of another do not abate upon the death of the wrongdoer. or the injured person. The injured person or the personal representatives or heirs of the person who died have a cause of action against the wrongdoer or the personal representatives of the wrongdoer for special and general damages. . . .

Utah Code Ann. § 78–11–12(1)(a).

Because the statute refers only to "parent or guardian," we must first determine the statutory meaning of these terms to determine whether someone standing in loco parentis comes within the statutory language. In construing section 78–11–6, our primary objective is to give effect to the legislature's intent. *Gohler v. Wood*, 919 P.2d 561, 562–63 (Utah 1996) (citing *West Jordan v. Morrison*, 656 P.2d 445, 446 (Utah 1982)). We generally look first to the plain language of the statute to discern the legislative intent. *Id.* " 'Thus, we will interpret a statute according to its plain language, unless such a reading is unreasonably confused, inoperable, or in blatant contravention of the express purpose of the statute.' " *Id.* (quoting *Perrine v. Kennecott Mining Corp.*, 911 P.2d 1290, 1292 (Utah 1996)). " 'Only when we find ambiguity in the statute's plain language need we seek guidance from the legislative history and relevant policy considerations.' " *Id.* (quoting *World Peace Movement of Am. v. Newspaper Agency Corp.*, 879 P.2d 253, 259 (Utah 1994)).

In interpreting section 78–11–6, we find no reason to look beyond this section's plain language to conclude that the Clydes do not qualify as the parents or guardians of Amber's unborn child. The ordinary meaning of the word "parent" is "[o]ne who begets, or brings forth, offspring." *Webster's New International Dictionary* 1776 (2d ed. 1954); *see also Vallati v. Gniazdowski*, 31 Conn.Supp. 238, 328 A.2d 431, 431 (1974). This meaning "denotes consanguinity rather than affinity." *Vallati*, 328 A.2d at 431. Clearly the Clydes do not qualify under this definition.

Other courts faced with arguments analogous to the Clydes' have declined to give the word "parent" a meaning other than its plain one. In *Solomon v. Harman*, 107 Ariz. 426, 489 P.2d 236, 238–39 (1971), the court held that foster parents standing in loco parentis could not recover for the wrongful death of their foster son. The court recognized the general rule that " '[t]he term "parent" as so employed is construed to mean the lawful or natural father or mother, and one in loco parentis who is neither the natural or adoptive parent cannot recover for the death of a

child.' " *Id.* at 241 (quoting 25A C.J.S. *Death* § 34(2) (1966)); *see also Miles v. Theobald Indus.*, 144 N.J.Super. 535, 366 A.2d 710, 712 (Super.Ct.App.Div.1976) (holding that person standing in loco parentis to deceased worker is not "parent" entitled to recover workers' compensation death benefits), *cert. denied*, 73 N.J. 51, 372 A.2d 316 (1977); *cf. Villareal v. State Dep't of Transp.*, 160 Ariz. 474, 774 P.2d 213, 219 (1989) (holding that only biological and adoptive children may recover for loss of consortium resulting from parent's injuries); *In re Ramont K.*, 305 Md. 482, 505 A.2d 507, 508 (1986) (holding that grandparent who stood in loco parentis was not parent within the meaning of statute imposing liability on " 'the parent of a child . . . [who] has committed a delinquent act' " (quoting Md. Code Ann.Cts. & Jud.Proc. § 3–829 (1974 & 1984 Repl.Vol.))). Although not all of these cases are wrongful death cases, we find their reasoning persuasive. Accordingly, we conclude that the Clydes are not entitled to maintain an action under section 78–11–6 as the parents of Amber's unborn child.

Likewise, the Clydes may not maintain an action as "guardians" of Amber's unborn child. Although the word "guardian" is not defined in the wrongful death statute, we assume that the legislature intended to use the word in accordance with its well-established legal meaning. *See Kelson*, 784 P.2d at 1156; *State v. Franklin*, 735 P.2d 34, 37 (Utah 1987); 2A Norman J. Singer, *Statutes and Statutory Construction* § 47.30 (5th ed. 1992). As defined in the Utah Uniform Probate Code, a guardian is one "who has qualified as a guardian of a minor or incapacitated person pursuant to testamentary or court appointment." Utah Code Ann. § 75–1–201(16). Although we are not required to apply this definition when interpreting section 78–11–6, we do so because we conclude that it reflects the ordinary legal meaning of the word "guardian." *Cf. Kelson*, 784 P.2d at 1156 (interpreting adult wrongful death statute in accordance with probate code definition of "heir"). Under this definition, one cannot become a guardian without being validly appointed. *See Decker v. Wiggins*, 421 S.W.2d 189, 192 (Tex.Civ.App.1967) ("A guardian is a statutory officer appointed by the Probate Court. . . ."). Because the Clydes were never appointed guardians of

Amber's unborn child, they cannot maintain an action as such under section 78–11–6.

Finally, we note that the legislature's failure to expressly include persons standing in loco parentis within the class of potential plaintiffs under section 78–11–6 appears to have been an intentional rejection of the concept of de facto parent or guardian in this context. The legislature has used the term "in loco parentis" in several unrelated statutes. *See, e.g.,* Utah Code Ann. § 7–1–611 (authorizing persons standing in loco parentis to withdraw balance of minor's savings account upon minor's death); *id.* § 76–2–401(3) (excluding persons standing in loco parentis from criminal responsibility for reasonable discipline of minor); *id.* § 78–14–5(4)(c) (authorizing persons standing in loco parentis to consent to health care for minor). In light of these statutes, we conclude that the legislature knew how to use the term "in loco parentis" but chose not to do so in section 78–11–6 and therefore did not intend to allow persons standing in loco parentis to maintain an action for the wrongful death of a minor.[3]

While we sympathize with the Clydes for their loss, we cannot ignore the plain language of section 78–11–6. "The fact that the result in some circumstances may be to unreasonably restrict the class of persons who can bring a wrongful death action is an argument for amendment of the statute, not for our ignoring its words." *Kelson,* 784 P.2d at 1157. The district court's ruling is affirmed.[4]

STEWART, Associate C.J., and HOWE, DURHAM and RUSSON, JJ., concur.

---

**3.** In contrast to section 76–11–6, Arkansas's wrongful death statute specifically includes persons standing in loco parentis within the class of its intended beneficiaries. That statute provides:

The beneficiaries of the action created in this section are the surviving spouse, children, father and mother, brothers and sisters of the deceased person, persons standing in loco parentis to the deceased person, and persons to whom the deceased stood in loco parentis. Ark.Code Ann. § 16–62–102(d).

**4.** Because we conclude that the Clydes do not have standing to maintain an action for the wrongful death of their unborn grandchild, we

need not decide the more general question of whether the death of a fetus can ever provide the basis for maintaining an action under section 78–11–6. *Cf. Webb v. Snow,* 132 P.2d 114, 119 (Utah 1942) ("While injuries resulting in a miscarriage are actionable, and compensation may be awarded for the physical and mental sufferings experienced by a woman who has a miscarriage by reason of injuries caused by the wrongful acts of others, damages are not awarded for 'loss of the unborn child' itself."), *criticized in Nelson v. Peterson,* 542 P.2d 1075, 1079 (Utah 1975) (Maughan, J., dissenting).