2008 OK 26

Michael PINO and Amy Pino as parents of deceased, Nevin Michael Pino, Plaintiffs/Appellants,

v.

The UNITED STATES of America, Defendant/Appellee.

No. 105,223.

Supreme Court of Oklahoma.

April 1, 2008.

Steven T. Horton, Brent Neighbors, Horton & Neighbors, Oklahoma City, OK, for Plaintiffs/Appellants.

Sheldon J. Sperling, United States Attorney, Jeanette Windsor, Assistant United States Attorney, Muskogee, OK, for Defendant/Appellee.

TAYLOR, J.

¶1 The United States Court of Appeals, Tenth Circuit, certified the following question under the authority of Tenth Circuit Rule 27.1 and the Revised Uniform Certification of Questions of Law Act, 20 O.S.2001, § 1601–1611.

As of September 1–2, 2003, did the Oklahoma Wrongful Death Statute, Okla. Stat. tit. 12, § 1053, afford a cause of action for the wrongful death of a nonviable stillborn fetus? [1]

I. FEDERAL LITIGATION

¶2 On December 19, 2005, the plaintiffs, Michael Pino and Amy Pino, filed a complaint in the United States District Court for the Eastern District of Oklahoma both individually and as the parents of Nevin Michael Pino against the United States of America. The complaint asserted a wrongful death ac-

---

1. A fetus is defined as "an unborn young from the end of the eighth week to the moment of birth as distinguished from the earlier embryo." American Heritage Dictionary 499 (2nd College ed.1982). A fetus is also defined as "[a]n unborn child. The unborn offspring of any viviparous animal; specifically the unborn offspring in the post embryonic period after major structures have been outlined (in man from seven or eight weeks after fertilization until birth.)" Black's Law Dictionary 559 (5th ed.1979).

Viability is defined as "[c]apability of living.... That stage of fetal development when the life of the unborn child may be continued indefinitely outside the womb by natural or artificial life-supportive systems." Id. at 1404.

This opinion is limited to the question presented by this medical malpractice case.

tion, alleging that the defendant's agents and servants were negligent in failing to properly treat Amy Pino and her unborn baby. The defendants answered, asserting as an affirmative defense that Oklahoma's wrongful death statute, title 12, section 1053, does not recognize a cause of action for a stillborn, nonviable fetus, such as Nevin Michael Pino.

¶ 3 For purposes of this opinion, we accept the following allegations as true. In June of 2003, Amy Pino began receiving prenatal care from the Carl Albert Indian Hospital (the Hospital). On September 1, 2003, Amy Pino arrived at the Hospital about 4:20 a.m. complaining of constant cramping and bright red vaginal bleeding. She was released about 5:10 a.m. after being diagnosed with a urinary tract infection. About three hours after she was discharged, an ambulance was called to her home. When Amy Pino arrived by ambulance at the Hospital about 9:30 a.m., Dr. Harvey was contacted. He diagnosed a placental abruption. About three hours later, Dr. Harvey ruptured the amniotic sac. About 4:00 a.m. on September 2, 2003, Amy Pino delivered a stillborn fetus.

¶ 4 In the federal district court, the plaintiffs contended that Dr. Harvey's diagnosis was erroneous and that his care fell below the acceptable standards. They also contended that at the time Dr. Harvey ruptured the amniotic sac, Amy Pino was stable and the fetus was alive with a detectable heartbeat and that title 12, section 1053 allowed a cause of action for the death of a stillborn, nonviable fetus. The federal district court granted judgment in favor of the defendant. It found that the parties did not contest that the stillborn "fetus was 20–weeks at the time of delivery and thus considered 'nonviable.'" The court found that Oklahoma did not recognize a wrongful death action for a stillborn, nonviable fetus. The plaintiffs appealed the federal district court's judgment to the United States Court of Appeals, Tenth Circuit, which certified the question now before this Court.

## II. HISTORY OF WRONGFUL DEATH CAUSES OF ACTION

¶ 5 We begin with a summary of the evolution of the wrongful death action where death occurs as a result of prenatal injury as thoroughly discussed in *Nealis v. Baird*, 1999 OK 98, ¶¶ 19–30, 996 P.2d 438, 446–452. In the English common law, the right of action for personal injury abated upon the injured person's death, and the person's dependents were left without a legal remedy. *Id.* ¶ 19, 996 P.2d at 446. To alleviate this situation, Parliament passed the Fatal Accidents Act of 1846, better known as Lord Campbell's Act, creating a cause of action for wrongful death. *Id.* Soon thereafter, all American jurisdictions passed similar laws. *Id.* However, courts refused to recognize a wrongful death action for children whose death was caused by prenatal injury. *See Dietrich v. Inhabitants of Northampton*, 138 Mass. 14 (Mass. 1884). The exclusion was based on lack of precedent, on the potential for fraud, on the theory that the mother-child are one unit, and on the position that the legislatures rather than courts should decide the issue. *See Drabbels v. Skelly Oil Co.*, 155 Neb. 17, 50 N.W.2d 229, 231–232 (1951)

¶ 6 In a change of direction, *Bonbrest v. Kotz*, 65 F.Supp. 138 (D.D.C.1946), recognized a cause of action for a prenatal injury incurred after the fetus became viable. Soon after *Bonbrest*, courts abandoned the requirement that the injury occur after the fetus became viable to allow a wrongful death action if a viable infant was born alive no matter when the injury occurred. *Nealis*, 1999 OK 98, ¶¶ 21–22, 996 P.2d at 448. One reason given for allowing recovery regardless of when the injury occurred was the perceived injustice of allowing one of two surviving children to recover while the other could not merely because their injuries occurred at different times in their developments. *Id.* ¶ 21 n. 30, 996 P.2d at 447–448 n. 30. In the next evolutionary phase, most jurisdictions abandoned the live birth requirement if the child survived *in utero* to the point of viability even though stillborn. *Id.* ¶ 22, 996 P.2d at 448–449.

¶ 7 Currently, a few courts recognize an action exists for the wrongful death of a nonviable fetus born alive, *see Group Health Ass'n, Inc. v. Blumenthal*, 295 Md. 104, 453 A.2d 1198 (1983); *Torigian v. Watertown News Co.*, 352 Mass. 446, 225 N.E.2d 926

(1967); *Hudak v. Georgy,* 535 Pa. 152, 634 A.2d 600 (1993), while others do not recognize such a cause of action. *See Ferguson v. District of Columbia,* 629 A.2d 15 (D.C.1993); *Miller v. Kirk,* 120 N.M. 654, 905 P.2d 194 (1995). A few courts recognize a cause of action for a stillborn, nonviable fetus. *See Smith v. Mercy Hospital and Medical Center,* 203 Ill.App.3d 465, 148 Ill.Dec. 567, 560 N.E.2d 1164, (1990); *Connor v. Monkem Co., Inc.,* 898 S.W.2d 89 (Mo.1995); *Wiersma v. Maple Leaf Farms,* 1996 SD 16, 543 N.W.2d 787 (S.D.1996); *Farley v. Sartin,* 195 W.Va. 671, 466 S.E.2d 522 (W.V.1995); *see also Porter v. Lassiter,* 91 Ga.App. 712, 87 S.E.2d 100 (1955) (allowing a cause of action if the fetus was "quick" in the womb). However, in our research, all but one of these are based on an express legislative statement authorizing the cause of action on behalf of an "unborn child." *See Farley,* 466 S.E.2d at 522.

## III. OKLAHOMA'S WRONGFUL DEATH STATUTE

¶ 8 On September 1–2, 2003, Oklahoma's wrongful death statute, 12 O.S.2001, § 1053, in pertinent part, provided:

A. When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, or his personal representative if he is also deceased, if the former might have maintained an action, had he lived, against the latter, or his representative, for an injury for the same act or omission. . . .

This is the version of section 1053 now before us, and the one to which we refer unless otherwise noted.

¶ 9 In 2005, the Oklahoma Legislature added subsection F(1) to section 1053. Subsection 1053(F)(1) provides: "The provisions of this section shall also be available for the death of an unborn child as defined in Section 1–730 of Title 63 of the Oklahoma Statutes." Title 63, section 1–730(2) defines "unborn child" as "the unborn offspring of human beings from the moment of conception, through pregnancy, and until live birth including the human conceptus, zygote, morula, bastocyst, embro and fetus." "Concep-

tion" is defined as "the fertilization of the ovum of a female individual by the sperm of a male individual." 63 O.S.2001, § 1–730(4).

■ ¶ 10 The Tenth Circuit determined that the 2005 amendment did not apply retroactively, and we agree. *See Wilson v. State ex rel. Oklahoma Tax Comm'n,* 1979 OK 62, ¶ 6, 594 P.2d 1210, 1212 (A clear expression of legislative intent is required to overcome the presumption that statutes operate prospectively only.). However, the defendant argued in the motion for summary judgment that the Legislature was making a change in Oklahoma's law, and the plaintiffs argued that the 2005 amendment was merely a clarification of the existing law.

## IV. THIS COURT'S RECOGNITION OF WRONGFUL DEATH ACTIONS DUE TO PRENATAL INJURY

¶ 11 This Court first addressed a wrongful death action due to prenatal injury in *Howell v. Rushing,* 1953 OK 232, 261 P.2d 217. The opinion adopted the rule that since a stillborn child could not "maintain an action at common law for injuries received by it before its birth," the personal representative or next of kin could not bring a cause of action under the wrongful death statute. *Id.* ¶ 0, 261 P.2d at 217. The *Howell* opinion summarily adhered to the rationale and decision in *Drabbels v. Skelly Oil Co.,* 155 Neb. 17, 50 N.W.2d 229 (1951).

¶ 12 In *Drabbels,* the plaintiff alleged that his child was delivered in approximately the eighth month of pregnancy, that it was viable and capable of an independent existence at the time of delivery, and that defendants caused the child's death. The Nebraska court disallowed a wrongful death action based on (1) fear of fraudulent claims and evidentiary difficulties, (2) the mother-child as one unit theory, and (3) the fact that a stillborn child could not maintain an action at common law. *Drabbels* ruled that there was no wrongful death action for a stillborn child whose death-causing injury occurred before birth. *Id.* at 232.

¶ 13 The next time that the issue of a wrongful death action due to prenatal injury came before this Court was in *Padillow v.*

*Elrod,* 1967 OK 18, 424 P.2d 16. In *Padillow,* the parents brought a wrongful death action on behalf of a stillborn, viable fetus. *Padillow* relied upon and reaffirmed the rule pronounced in *Howell.*

¶ 14 In 1976, this Court rejected the rule of *Howell* and *Padillow* in *Evans v. Olson,* 1976 OK 64, 550 P.2d 924. *Evans* reasoned: "[T]he common-law in Oklahoma as to such a cause of action has been too rigid. It should be flexible and elastic enough to adapt to the facts of life in light of our scientific knowledge and modern society." *Id.* ¶ 8, 550 P.2d at 927. *Evans* construed section 1053's term "one" as in "death of one" to include a viable fetus. *Id.* ¶ 10, 550 P.2d at 927. Rejecting that an action should be cut off because of a child's death before birth, *Evans* recognized a wrongful death action brought on behalf of a stillborn, viable child. *Evans* settled *"that a fetus is a person for purposes of § 1053 even if it has never drawn a breath."* See *Nealis,* 1999 OK 98, ¶ 35, 996 P.2d at 453. *Evans* signaled a change in focus from a fetus's status to the wrongful conduct.

¶ 15 Our next decision in this line of cases is *Graham v. Keuchel,* 1993 OK 6, 847 P.2d 342. The child in *Graham* was born alive with a hemolytic disease called erythroblastosis fetalis and died four days later. The parents alleged that the disease was caused by the defendants' failure to administer the antisensitization drug Rho–GAM after the mother's previous pregnancy and miscarriage. The defendant doctors argued that, based on *Evans,* the district court should have dismissed the wrongful death action. This Court disagreed and, citing *Evans,* stated: *"[D]amages should be recoverable for a person's wrongful conduct which interferes with a child's right to begin life with a sound mind and body; competent proof must establish the causal connection between the wrongful interference and the harm suffered by the child when born."* *Id.* ¶ 56, 843 P.2d at 346. *Graham* teaches that a wrongful death action can be predicated on an injury occurring before viability and even before conception. See *Nealis,* 1999 OK 98, ¶ 34, 996 P.2d at 452.

¶ 16 Most recently, this Court decided *Nealis v. Baird,* in which the issue was "whether a claim may be brought under Oklahoma's wrongful death statute on behalf of a nonviable fetus born alive." *Id.* ¶ 1, 996 P.2d at 441–442. In allowing the claim, we found the statutory requirements of "the death of one [who] might have maintained an action, had he lived" included the death of a nonviable fetus born alive. *Id.* ¶¶ 35–39, 996 P.2d at 452–454. *Nealis* rejected the argument "that the statute presupposes that the decedent at one time lived prior to dying," stating "[h]ad [the child] merely been injured by the alleged tortious acts which were said to have caused his death, he could have brought a personal injury action to recover damages for such injuries." *Id.* ¶¶ 38–39, 996 P.2d at 453–454. Under *Nealis,* a fetus born alive, regardless of viability, is "one" and "must be recognized as a person for purposes of the wrongful death statute." *Id.* ¶ 63, 996 P.2d at 462. Still focusing on the tortious act, *Nealis* rejected the reasons given in *Howell* and *Padillow* for refusing to recognize a wrongful death action due to prenatal injury. *Id.* ¶ 40, 996 P.2d at 454.

¶ 17 *Evans, Graham, and Nealis* have settled that Oklahoma's wrongful death statute before the 2005 amendment affords a cause of action for a fetus who suffers a prenatal injury which brings about its death, regardless of viability at the time of the injury, caused by the wrongful act or omission of another if the fetus was viable, whether stillborn or born alive, or if the fetus was nonviable and born alive. We now address whether Oklahoma's 2001 wrongful death statute affords a cause of action for the wrongful death of a stillborn, nonviable fetus.

¶ 18 Section 1053, Oklahoma's wrongful death statute, requires (1) the death of one (2) caused by the wrongful act or omission of another and (3) the act is such as would have entitled the "one" to bring a cause of action if death had not ensued. We determined in *Nealis* that the term "one" was sufficiently broad to include a nonviable fetus. We also determined in *Nealis* that a cause of action in tort could be maintained on behalf of a nonviable fetus had it continued to develop after the injury and was subsequently born alive. In *Evans,* we eliminated the criterion of live birth of a viable fetus to

allow an action for the death of a stillborn, viable fetus. Having found that the "death of one" includes the death of a nonviable fetus, and a nonviable fetus is "one" that would be entitled to bring a cause of action in tort if death had not ensued, *Nealis,* 1999 OK 98, ¶¶ 35, 38, 996 P.2d at 453, 454, we conclude that in 2003, section 1053 afforded a cause of action for the wrongful death of a stillborn, nonviable fetus. We find no logical reason to resurrect the criterion of live birth we rejected in *Evans* merely because the fetus was nonviable at the time of delivery where evidence shows a tortious act ended a fetus's normal development.

¶ 19 The construction we have placed on section 1053 is consistent with section 1053's purpose, with other of Oklahoma's public policy statements, and with our concept that liability follows tortious conduct. Oklahoma's wrongful death statute, like other wrongful death statutes, was designed to fill a gap in the common law. It was enacted to provide damages for death caused by tortious conduct. This purpose would be denied if a wrongful death action were predicated on a live birth. To allow a tortfeasor to escape liability merely because of the fortuitous circumstance of a fetus dying moments before delivery rather than moments after birth would derogate section 1053's purpose.

¶ 20 Our construction of section 1053 is in keeping with the focus being placed not on a fetus's status but on the tortious conduct. It is also compelled by the concept of affording a remedy for every wrong, Okla. Const. art. II, § 6 (providing for every wrong and for every injury to person, a speedy and certain remedy shall be afforded), and the public policy protecting fetuses, whether viable or nonviable and whether stillborn or born alive. Okla. Const. art. XXIII, § 7 (providing that the "right of action to recover damages for injuries resulting in death shall never be abrogated"). We determined in *Evans* that "one" as used in section 1053 is synonymous with the word "person," and includes a nonviable fetus. Our construction of section 1053 and the Oklahoma Constitution requires that a remedy be afforded for the death of a fetus, whether or not viable and whether or not born alive, and prohibits abrogating such an action.

¶ 21 We take yet another "step along the road first traveled by Lord Campbell's Act and its American successors." *Nealis,* 1999 OK 98, ¶ 63, 996 P.2d at 438. To hold that section 1053 does not protect a nonviable, stillborn fetus would be a step backward on the road. It would create the anomalous result of allowing a tortfeasor to escape liability for causing the death of a nonviable fetus while subjecting to liability the tortfeasor whose acts caused a nonfatal injury. It would create the anomalous result of allowing recovery for an injury to a nonviable twin who takes one breath while denying recovery to the other nonviable twin suffering the same injury but whose heart stops beating moments before delivery. It would allow one of two equally blameworthy tortfeasors to escape liability merely because the fetus died before delivery while the other tortfeasor would be held liable merely because the injured fetus took one breath after delivery.

¶ 22 *Evans* and *Nealis* disposed of any argument that legislative action is necessary to include within section 1053's reach the death of a stillborn, nonviable fetus. *Nealis,* 1999 OK 98, ¶ 40, 996 P.2d at 454; *Evans,* 1976 OK 64, ¶ 13, 550 P.2d at 928. The Legislature left the reach of section 1053 to the growth in the common law. *Nealis,* 1999 OK 98, ¶ 40, 996 P.2d at 454; *Evans,* 1976 OK 64, ¶ 13, 550 P.2d at 928. It follows from our construction of title 12, section 1053 of the 2001 Oklahoma Statutes that the 2005 amendment to section 1053 was a clarification of law before the amendment.

¶ 23 The conclusion we reach is not the prevailing view among jurisdictions ruling on the issue. As previously mentioned, we have found one other jurisdiction, West Virginia, which has allowed a wrongful death action for a stillborn, nonviable fetus without express legislative direction. *Farley v. Sartin,* 195 W.Va. 671, 466 S.E.2d 522 (1995). The Supreme Court of Rhode Island, in *Presley v. Newport Hospital,* 117 R.I. 177, 365 A.2d 748 (1976), found that viability was an arbitrary demarcation line, but the fetus in *Presley* had reached viability. Then in *Miccolis v. AMICA Mutual Insurance Company,* 587

A.2d 67 (R.I.1991), when directly presented with the issue, the court refused to allow the wrongful death cause of action for a stillborn, nonviable fetus. However, the construction we place on title 12, section 1053 of the 2001 Oklahoma Statutes is consistent with the statute's purpose, with our decisions, and with Oklahoma's public policy.

## V. CONCLUSION

¶ 24 As of September 1–2, 2003, Oklahoma's wrongful death statute, Okla. Stat. tit. 12, § 1053, afforded a cause of action for the wrongful death of a nonviable, stillborn fetus. The 2005 amendment to section 1053 was a clarification and not a change in the law. This answer is consistent with the purposes of section 1053, our decisions in *Evans, Graham*, and *Nealis*, and with Oklahoma public policy.

**CERTIFIED QUESTION ANSWERED.**

ALL JUSTICES CONCUR.