2011 UT 80

**Miguel CARRANZA and Amelia Sanchez, natural parents of Jesua M.V. Carranza–Sanchez, deceased, Plaintiffs and Appellants,**

v.

**UNITED STATES and John and Jane Does I–X, Defendants and Appellees.**

**No. 20090409.**

Supreme Court of Utah.

Dec. 20, 2011.

Kevin J. Sutterfield, Brett R. Boulton, Provo, for appellants.

Carlie Christensen, Jeffrey E. Nelson, Amy J. Oliver, Salt Lake City, for appellees.

Chief Justice DURHAM, opinion:

## INTRODUCTION

¶ 1 This case presents a single issue on certification from the U.S. District Court for the District of Utah: "Does Utah's wrongful death statute allow an action for the wrongful death of an unborn child?" At the time the claim was filed, Utah's wrongful death statute stated in relevant part that "a parent or guardian may maintain an action for the death or injury of a minor child when the injury or death is caused by the wrongful act or neglect of another." UTAH CODE ANN. § 78–11–6 (Supp.2006).[1]

¶ 2 Although there is no majority opinion, four members of this court hold that the statute allows an action for the wrongful death of an unborn child; the term "minor child," as used in the statute, includes an unborn child.

## BACKGROUND

¶ 3 Appellant Amelia Sanchez received prenatal care at the Mountainlands Community Health Center in Provo, Utah, between December 28, 2005, and April 19, 2006. On April 19, 2006, Ms. Sanchez went to the Utah Valley Regional Medical Center, and it was determined that the fetus had no heartbeat. On April 20, 2006, Ms. Sanchez gave birth to a stillborn male.

¶ 4 Ms. Sanchez and Miguel Carranza, the stillborn child's father, filed suit against the United States in federal district court.[2] They alleged medical negligence and requested damages for their pain and suffering, for the wrongful death of their child, and for expenses related to their child's death.

¶ 5 The United States filed a motion in limine to exclude from trial all evidence regarding the plaintiffs' damages for wrongful death. In response, the plaintiffs filed a motion to certify the following question to the Utah Supreme Court: "Does Utah Code Ann. § 78–11–6 allow a claim to be made for the wrongful death of an unborn child?" Noting that the plaintiffs' proposed question for certification is dispositive of the motion in limine and that there is no controlling Utah law, the federal district court granted the plaintiffs' motion to certify. We have jurisdiction pursuant to Utah Code section 78A–3–102(1).

## STANDARD OF REVIEW

¶ 6 "On certification, we answer the legal questions presented without resolving the underlying dispute." *Iverson v. State Farm Mut. Ins. Co.*, 2011 UT 34, ¶ 8, 256 P.3d 222 (internal quotation marks omitted).

## ANALYSIS

¶ 7 At the time this claim was filed, Utah's wrongful death statute stated that "a parent or guardian may maintain an action for the death or injury of a minor child when the injury or death is caused by the wrongful act or neglect of another." UTAH CODE ANN. § 78–11–6 (Supp.2006).[3]

¶ 8 When interpreting statutes, this court's objective "is to give effect to the legislature's intent." *Harold Selman, Inc. v. Box Elder Cnty.*, 2011 UT 18, ¶ 18, 251 P.3d 804 (internal quotation marks omitted). "To discern legislative intent, we look first to the statute's plain language." *Id.* (internal quotation marks omitted). If the language of the statute yields a plain meaning that does not lead to an absurd result, the analysis ends. *LPI Servs. v. McGee*, 2009 UT 41, ¶ 11, 215 P.3d 135. "[T]he statutory text may not be 'plain' when read in isolation, but

---

1. The legislature has since amended the statute to apply only to the injury, not the death, of a minor child. UTAH CODE ANN. § 78B–3–102 (Supp.2011). At the same time, the legislature amended Utah Code section 78B–3–106(1) to state that "when the death of a person is caused by the wrongful act or neglect of another, his heirs … may maintain an action for damages against the person causing the death." This decision does not address the certified question as applied to Utah Code section 78B–3–106(1).

2. Mountainlands Community Health Center, its employees, and its contracted physicians are Public Health Service employees under 42 U.S.C. § 233(g). The federal district court therefore has jurisdiction under 28 U.S.C. § 1346.

3. *See supra* ¶ 1 n. 1.

may become so in light of its linguistic, structural, and statutory context." *Olsen v. Eagle Mountain City*, 2011 UT 10, ¶ 9, 248 P.3d 465.

¶ 9 This court has not yet reached the issue of whether the statute's reference to "minor child" includes an unborn child. *See State Farm Mut. Auto. Ins. Co. v. Clyde*, 920 P.2d 1183, 1187 n. 4 (Utah 1996). In *Clyde*, the plaintiffs' minor daughter and her unborn child were both killed in an automobile accident. *Id.* at 1184. When the plaintiffs sued to recover damages for the death of their unborn grandchild, the court held that the plaintiffs were "not entitled to maintain an action under section 78–11–6" because they did "not qualify as the parents or guardians of [the] unborn child." *Id.* at 1186. Therefore, the court had no need to "decide the more general question of whether the death of a fetus can ever provide the basis for maintaining an action under section 78–11–6." [4] *Id.* at 1187 n. 4.

■ ¶ 10 In my view, a plain language reading reveals that the term "minor child,"

as used in this statute, includes an unborn child. The statute does not itself define the term "minor child," but in general usage the term "child" may refer to a young person, a baby, or a fetus. BLACK'S LAW DICTIONARY 271 (9th ed. 2009).[5] The adjective "minor" is connected to the concept of legal minority: it modifies the term "child" to include a child who has not yet reached the age of majority. Therefore, "minor" sets an upper age limit on the term "child" at majority, but does not set a lower limit. The term "minor," then, may refer to the period from conception to the age of majority, thereby encompassing an unborn child.[6]

¶ 11 The United States argues that the legislature generally uses "the modifier 'unborn' when it intends to include an unborn child in statutory provisions." The United States is correct that the term "unborn child" appears elsewhere in the Utah Code, even in the same statute as the term "minor." *See* UTAH CODE ANN. § 75–7–303(6) (Supp.2011) [7] ("[A] parent may represent and bind the parent's minor or unborn child if a conservator or guardian for the child has not been

---

4. In *Clyde*, the court cited two cases that address the existence of a cause of action for the wrongful death of an unborn child. 920 P.2d at 1187 n. 4. *See generally Webb v. Snow*, 102 Utah 435, 132 P.2d 114, 119 (1942) (holding that "damages are not awarded for 'loss of the unborn child' itself"); *Nelson v. Peterson*, 542 P.2d 1075, 1077 (Utah 1975) (citing *Webb*, 132 P.2d at 119) (holding that there is no cause of action for the wrongful death of a viable fetus). However, these cases do not address Utah Code section 78–11–6 in their analyses. Therefore, the certified question presents this court with a matter of first impression.

5. Statutory terms may have different meanings in different statutes. *See, e.g., Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶¶ 18–20, 267 P.3d 863. For instance, Utah courts have interpreted the term "child," as used in other statutes, to exclude an unborn child. *See Alma Evans Trucking v. Roach*, 714 P.2d 1147, 1148 (Utah 1986) (holding that the term "child," when defined to include a posthumous child, refers to "a child which has been born"); *Alt. Options & Servs. for Children v. Chapman*, 2004 UT App 488, ¶ 35, 106 P.3d 744 (noting that the statute, "for better or worse, clearly contemplates applicability only to children who have already been born" because it required "[t]he name, date, and place of birth of the child" (alteration in original) (internal quotation marks omitted)).

6. Five other states have addressed whether the term "minor child" includes an unborn child in the context of a wrongful death statute with varying results. *Compare Eich v. Town of Gulf Shores*, 293 Ala. 95, 300 So.2d 354, 355 (1974) (relying on "[l]ogic, fairness and justice" to interpret "minor child" to include a stillborn fetus), *Volk v. Baldazo*, 103 Idaho 570, 651 P.2d 11, 14 (1982) ("We hold that a lower age limitation is neither implied [by the term 'minor child'] nor necessary. An unborn viable child traditionally has legal existence and rights and is easily considered within the meaning of the term 'minor child'."), *and Moen v. Hanson*, 85 Wash.2d 597, 537 P.2d 266, 267 (1975) ("[N]o lower age limitation is implied by the term ['minor child'], because none is necessary; an unborn viable child traditionally has legal existence, personality and rights, and is easily considered within the 'minor child' definition." (citation omitted)), *with Stokes v. Liberty Mut. Ins. Co.*, 213 So.2d 695, 700 (Fla.1968) (looking to the legislature's use of the term "minor child" in other statutes to hold that a stillborn fetus is not a "minor child"), *and Kuhnke v. Fisher*, 210 Mont. 114, 683 P.2d 916, 918–19 (1984) (holding that a fetus is not a "minor child" because it falls outside of the statutorily defined "period of minority").

7. Although this case involves a 2006 statute, I cite to current versions of other statutes so long as there has been no substantive change from their 2006 versions.

appointed."). However, the legislature has adopted various formulae in different statutes, and my plain language interpretation of "minor child" in this statute yields no absurd results.[8] *See Encon Utah, LLC v. Fluor Ames Kraemer, LLC,* 2009 UT 7, ¶ 73, 210 P.3d 263 ("When statutory language plausibly presents the court with two alternative readings, we prefer the reading that avoids absurd results." (internal quotation marks omitted)).

¶ 12 On the contrary, my analysis results in the recognition of a cause of action for the wrongful death of an unborn child, a conclusion that is consistent with other provisions of the Utah Code. First, this cause of action mirrors the Utah Criminal Code's protection for unborn children. *See, e.g.,* Utah Code Ann. § 76–7–301.1(1) (2008) ("It is the finding and policy of the Legislature … that unborn children have inherent and inalienable rights that are entitled to protection by the state of Utah pursuant to the provisions of the Utah Constitution."); *see also id.* § 76–5–201(1)(a) (Supp. 2011) (defining the offense of criminal homicide to include the death of "an unborn child at any stage of its development"). Second, recognizing a cause of action for the wrongful death of an unborn child falls in line with the Utah Judicial Code's statement that "the public policy of this state [is] to encourage all persons to respect the right to life of all other persons, … including … all unborn persons." *Id.* § 78B–3–109(1) (2008).

¶ 13 In recognizing the existence of this cause of action, I acknowledge that a plaintiff may encounter difficulties in proving causation for the wrongful death of an unborn child. However, "the substantive rights resulting from wrongful death must be protected, regardless of the inherent practical difficulties." *Eich v. Town of Gulf Shores,* 293 Ala. 95, 300 So.2d 354, 358 (1974).

## CONCLUSION

¶ 14 Utah Code section 78–11–6 allows an action for the wrongful death of an unborn child,[9] beginning at conception.[10] This decision is limited to the statute as it existed before its amendment in 2009 and thus it does not address whether Utah Code section 78B–3–106(1) allows an action for the wrongful death of an unborn child.

Chief Justice DURHAM authored an opinion, in which Justice PARRISH joined.

Justice LEE authored an opinion, in which Associate Chief Justice DURRANT joined.

Justice NEHRING filed a dissenting opinion.

Justice LEE, opinion:

¶ 15 The question whether a fetus is a "minor child" under our wrongful death statute is a difficult one. It cannot properly be resolved by simple resort to dictionary definitions of the statutory text, as accepted definitions of "minor child" include both a narrow notion of a child postpartum and also a broader notion that encompasses a child *in utero.*

¶ 16 Thus, Chief Justice Durham's opinion notes that some definitions of "child" encompass a "baby" or "fetus," *supra* ¶ 10 [1] and

---

8. Rather, recognizing the existence of a cause of action for the wrongful death of an unborn child is a logical result. *See Stidam v. Ashmore,* 109 Ohio App. 431, 167 N.E.2d 106, 108 (1959) ("Suppose, for example, viable unborn twins suffered simultaneously the same prenatal injury of which one died before and the other after birth. Shall there be a cause of action for the death of the one and not for that of the other? Surely logic requires recognition of causes of action for the deaths of both, or for neither.").

9. Thirty-six other states have recognized a cause of action for the wrongful death of an unborn child, some by statute and others by court decision. Amber N. Dina, Comment, *Wrongful Death and the Legal Status of the Previable Embryo:*

*Why Illinois Is on the Cutting Edge of Determining a Definitive Standard for Embryonic Legal Rights,* 19 Regent U. L.Rev. 251, 255 n. 41, 256 n. 42 (2006).

10. Three other state courts have also recognized an action for the wrongful death of an unborn child, beginning at conception. *Danos v. St. Pierre,* 402 So.2d 633, 638 (La.1981); *Connor v. Monkem Co.,* 898 S.W.2d 89, 92 (Mo.1995); *Farley v. Sartin,* 195 W.Va. 671, 466 S.E.2d 522, 523 n. 3, 534 (1995).

1. *See* Black's Law Dictionary 271 (9th ed. 2009) (defining "child" as "1. A person under the age of majority…. 5. A baby or fetus").

that "minor" often refers to an individual under the age of a legally recognized minority (without any age floor), *supra* ¶ 10.[2] At the same time, the dissent cites an alternative notion of "child" as referring to a " 'child which has been born.' " *Infra* ¶ 30.

¶ 17 Each side seeks to validate its construction as rooted in the statute's "plain language." *Supra* ¶ 10; *infra* ¶ 29. I fail to find a plain answer in the statutory text, however. I view the bare words of the statute to be susceptible to either a broad construction that includes unborn children or a narrow one that excludes them.

¶ 18 Where both parties' interpretations fall within the range of meanings identified in dictionaries, it is unhelpful for the court to rest on the unelaborated assertion that our chosen construction is dictated by the "plain language." Too often, a court's conclusion that statutory language is "plain" is a substitute for careful analysis. At best, such unexplained conclusions are based on a judge's gestalt sense of the best meaning of the words in question. At worst, the bare insistence that statutory language is "plain" is cover (perhaps subconscious) for judicial policymaking.

¶ 19 Any appearance of the latter is unacceptable. And the former is insufficient, as it gives no guidance to the drafters or targets of legislation as to how this court will interpret statutory language (beyond the unhelpful assurance that we will do what seems best and label it "plain language"). In my view, then, we need to identify the linguistic and statutory cues that persuade us that one interpretation or the other is appropriate.

¶ 20 Our commitment to the "plain language" of statutes is "simple to articulate in the abstract, but often difficult to apply in contested cases where both sides offer conceivable constructions of the language in question." *Olsen v. Eagle Mountain City,* 2011 UT 10, ¶ 9, 248 P.3d 465. "In such cases, the statutory text may not be 'plain' when read in isolation, but may become so in light of its linguistic, structural, and statutory context." *Id.* "[W]e do not interpret the 'plain meaning' of . . . statutory term[s] in isolation. Our task, instead, is to determine the meaning of the text given the relevant context of the statute (including, particularly, the structure and language of the statutory scheme)." *Id.* ¶ 12.

¶ 21 For me, it is the context of the wrongful death statute that resolves the interpretive question presented in this case. Specifically, the basis for interpreting "minor child" to include children *in utero* is found in the nature and scope of the right of action recognized in the wrongful death statute. A reasonably informed reader would understand that the statute's cause of action encompasses claims for "death *or injury*" to a "minor child." UTAH CODE ANN. § 78-11-6 (2006) (emphasis added). In the case of fetal *injury*, there is no doubt that a cause of action would accrue at the time of a battery or other tortious harm to the fetus. The universal rule, in fact, is that prenatal injuries are actionable when a child survives the tortious act.[3] And given that minor children

---

2. *See id.* at 1086 (defining "minor" as a "person who has not reached full legal age; a child or juvenile"). The Utah Legislature created a similarly top-bounded definition of minority, providing that "[t]he period of minority extends in males and females to the age of eighteen years." UTAH CODE ANN § 15-2-1 (2009).

3. *See Wolfe v. Isbell,* 291 Ala. 327, 280 So.2d 758, 761 (1973), *superseded by statute as recognized in Mack v. Carmack,* 79 So.3d 597, 2011 WL 3963006 (Ala.2011); *Scott v. McPheeters,* 33 Cal. App.2d 629, 92 P.2d 678, 679 (1939), *superseded by statute as recognized by Wilson v. Kaiser Found. Hosp.,* 141 Cal.App.3d 891, 190 Cal.Rptr. 649 (1983); *Simon v. Mullin,* 34 Conn.Supp. 139, 380 A.2d 1353, 1357 (1977); *Greater S.E. Cmty. Hosp. v. Williams,* 482 A.2d 394, 396 (D.C. 1984); *Day v. Nationwide Mut. Ins. Co.,* 328

So.2d 560, 562 (Fla.Dist.Ct.App.1976); *McAuley v. Wills,* 251 Ga. 3, 303 S.E.2d 258, 260 (1983); *Rapp v. Hiemenz,* 107 Ill.App.2d 382, 246 N.E.2d 77, 79 (1969); *Grp. Health Ass'n v. Blumenthal,* 295 Md. 104, 453 A.2d 1198, 1207 (1983); *Thibert v. Milka,* 419 Mass. 693, 646 N.E.2d 1025, 1026 (1995); *Burchett v. Rx Optical,* 232 Mich. App. 174, 591 N.W.2d 652, 655 (1998); *Bennett v. Hymers,* 101 N.H. 483, 147 A.2d 108, 109 (1958); *Smith v. Brennan,* 31 N.J. 353, 157 A.2d 497, 504 (1960); *Endresz v. Friedberg,* 24 N.Y.2d 478, 301 N.Y.S.2d 65, 248 N.E.2d 901, 905 (1969); *Woods v. Lancet,* 303 N.Y. 349, 102 N.E.2d 691, 695 (1951); *Stetson v. Easterling,* 274 N.C. 152, 161 S.E.2d 531, 533 (1968); *Hopkins v. McBane,* 359 N.W.2d 862, 864 (N.D. 1984); *Williams v. Marion Rapid Transit, Inc.,* 152 Ohio St. 114, 87 N.E.2d 334, 337 (1949); *Pino v. United States,* 2008 OK 26, ¶ 17, 183 P.3d

have tort claims when they survive a tortious act *in utero*, it would be absurd to read the statute to foreclose such claim when the fetus is so battered that he dies in the womb. If a "minor child" includes a fetus who suffers tortious injury, surely that same term encompasses the same kind of being that suffers an even more horrific tortious act.

¶ 22 A contrary view would yield perverse incentives that the wrongful death statute cannot reasonably be read to countenance.[4] If "minor child" did not extend to a fetus, tortfeasors would be better off killing a fetus in the womb (in which case they would escape liability) than to merely injure it (in which case they would be liable for the injuries or post-birth death of a fetus if it happens to be born alive, however fleeting its sojourn outside the womb). "It would be bizarre, indeed, to hold that the greater the harm inflicted the better the opportunity for exoneration of the defendant." *Eich v. Town of Gulf Shores*, 293 Ala. 95, 300 So.2d 354, 355 (1974). The legislature could not have

intended such bizarre results under the wrongful death statute.[5] I would read the statute to avoid such absurdities and would resolve the ambiguity in the meaning of "minor child" to preserve a workable legal regime in which unborn children have claims for both personal injury and wrongful death.

¶ 23 The dissent's contrary conclusion rests principally on the assertion that this construction of "child" is "peculiar" and that the more "commonly understood" notion of the term "contemplates a child born and capable of separate existence." *Infra* ¶¶ 34, 36. I do not doubt that the phrase "minor child" is ordinarily used to refer to children postpartum and not *in utero*. But the question here is not which usage is ordinary or more common, for it is clear from the legal context of the statute that the legislature was not using "minor child" in its ordinary sense but in a sense that accounts for the undisputed right of a parent to sue for injury to a fetus who survives a tortfeasor's wrongful acts.[6]

1001; *Carroll v. Skloff*, 415 Pa. 47, 202 A.2d 9, 11 (1964), *overruled on other grounds by Amadio v. Levin*, 509 Pa. 199, 501 A.2d 1085 (1985); *Sylvia v. Gobeille*, 101 R.I. 76, 220 A.2d 222, 224 (1966); *Hall v. Murphy*, 236 S.C. 257, 113 S.E.2d 790, 793 (1960); *Yandell v. Delgado*, 471 S.W.2d 569, 570 (1971); *Seattle–First Nat'l Bank v. Rankin*, 59 Wash.2d 288, 367 P.2d 835, 838 (1962); *see also* Restatement (Second) of Torts § 869(1) (1965) ("One who tortiously causes harm to an unborn child is subject to liability to the child for the harm if the child is born alive.").

4. *Encon Utah, LLC v. Fluor Ames Kraemer, LLC*, 2009 UT 7, ¶ 73, 210 P.3d 263 ("When statutory language plausibly presents the court with two alternative readings, we prefer the reading that avoids absurd results." (internal quotation marks omitted)); *see also State v. Redd*, 1999 UT 108, ¶ 12, 992 P.2d 986 ("Where we are faced with two alternative readings, and we have no reliable sources that clearly fix the legislative purpose, we look to the consequences of those readings to determine the meaning to be given the statute. . . . In other words, we interpret a statute to avoid absurd consequences."); *Clover v. Snowbird Ski Resort*, 808 P.2d 1037, 1045 n. 39 (Utah 1991) ("When dealing with unclear statutes, this court renders interpretations that will avoid absurd consequences." (internal quotation marks omitted)).

5. The dissent hypothesizes "absurdities" in two other statutes that supposedly ensue from a construction that recognizes a wrongful death claim for unborn children, *infra* ¶¶ 40–45, but the sce-

narios it imagines are hardly a necessary result of today's decision. Identical terms may be used in different statutes in different ways, and it is our role to construe each statute on its own terms, not to preserve consistency across the various volumes of the state code. The dissent's examples thus tell us nothing of any particular value to the resolution of this case.

First, the notion of a husband acquiring a statutory right to seize a fetus and "adjacent anatomical structures" of his wife upon her abandonment, *infra* ¶ 43 (citing Utah Code Ann. § 30–2–10), assumes a false equivalence between the abandonment statute and this one. In the context of the cited abandonment provision, "custody of minor children" would naturally be understood to encompass only children living in the household outside the womb, as "custody" is never granted in the dissent's absurd sense of removing a fetus and a womb from a mother and awarding it to a father.

Second, the dissent's hypothetical under the Public Safety Retirement Act is interesting, *infra* ¶ 44, but hardly telling with respect to the issue presented in this case. I do not know whether a fetus conceived at the time of a covered employee's death would be treated as a statutory beneficiary if the employee had no spouse at the time of death. On first blush that strikes me as plausible. But in any event the answer to that hypothetical tells us nothing about the construction of "minor child" in the wrongful death statute.

6. *See Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863 ("[W]hen inter-

¶ 24 For that reason, the relevant question is not whether "minor child" is *ordinarily* used to encompass children *in utero*, but whether those words conceivably could be used in that way. I think the answer to that question is clearly yes. First, the term "child" is used extensively in the popular press to refer to the unborn,[7] including in publications (like the New York Times) that could hardly be thought to be tainted by a so-called "anti-abortion political rhetoric," *infra* ¶ 32. And if the unborn count as children, they can hardly be disqualified by the addition of the adjective "minor." The dissent makes no effort to counter the standard meaning of "minor" cited by the majority, which encompasses anyone under the age of eighteen.

¶ 25 Case law confirms this understanding of the role of the term "minor." This term simply clarifies that a parent's right to sue for death or injury of a child is cut off when the child reaches the age of majority.[8] After

the age of majority, the cause of action belongs to the child himself or to his spouse or heir, not to his parent.[9]

¶ 26 Thus, if an unborn person can be called a "child," he can also be called a "minor child." The adjective "minor" changes nothing, except to add an upper-bound after which a parent has no right to sue. And since that construction is possible, I find it unavoidable, as a contrary conclusion attributes to the legislature a bizarre regime in which tortfeasors can avoid liability by killing and not just injuring their victims and surviving fetuses have claims that are foreclosed for their less fortunate counterparts. I would ground our construction of the statute on that basis and not on the notion that the statutory language is "plain."

Justice NEHRING, dissenting:

¶ 27 I respectfully dissent. The majority's conclusion that an unborn fetus is a "minor child" as used in Utah Code section 78–11–6 [1]

---

preting a statute, we assume, *absent a contrary indication*, that the legislature used each term advisedly according to its ordinary and usually accepted meaning." (emphasis added) (internal quotation marks omitted)); *O'Dea v. Olea*, 2009 UT 46, ¶ 32, 217 P.3d 704 (noting that ordinary usage is inferred "in the absence of evidence of a contrary intent").

7. *See, e.g.*, Ruth Palaver, *Unnatural Selection: The Two–Minus–One Pregnancy*, N.Y. TIMES MAG., Aug. 10, 2011, at MM22 (characterizing a fourteen-week-old fetus created "in a test tube" as a "child"); Lisa Balkan, *The Science of Boys and Girls*, MOTHERLODE (July 27, 2011, 12:15 p.m.), http://parenting.blogs.nytimes.com/2011/07/27/the-science-of-boys-and-girls/ ("So, fetuses of different sexes might just be sending different signals from the inside to the outside. But what about the other direction? Are there external influences that determine the sex of a child in the first place?"); James C. McKinley, Jr., *Strict Abortion Measures Enacted in Oklahoma*, N.Y. TIMES, Apr. 28, 2010, at A14 ("A second measure ... prevents women who have had a disabled baby from suing a doctor for withholding information about birth defects while the child was in the womb."); Amy Harmon, *Burden of Knowledge: Tracking Prenatal Health; In New Tests for Fatal Defects, Agonizing Choices for Parents*, NYTIMES.COM, June 20, 2004, http://www.nytimes.com/2004/06/20/us/burden-knowledge-tracking-prenatal-health-new-tests-for-fetal-defects-agonizing.html?ref=amyharmon (explaining that the results of a woman's fetal health screening showed that "the child had a high chance of having Down syndrome").

8. *See, e.g.*, *Burt v. Ross*, 43 Wash.App. 129, 715 P.2d 538, 539 (1986) (holding that parents had no wrongful death action for twenty-year-old child because she was over eighteen and therefore "not a minor child for the purposes of the wrongful death statute"); *Hanley v. Liberty Mut. Ins. Co.*, 323 So.2d 301, 302–04 (Fla.Dist.Ct.App. 1975) (concluding that a parent's wrongful death action is cut off when her child reaches eighteen years).

9. *See* UTAH CODE ANN. § 78–11–7 (2006) ("[W]hen the death of a person not a minor is caused by the wrongful act or neglect of another, his heirs, or his personal representatives for the benefit of his heirs, may maintain an action for damages against the person causing the death...."); *Switzer v. Reynolds*, 606 P.2d 244, 247 (Utah 1980) ("In Utah, ... the wrongful death ... cause of action ... runs directly to the heirs...."); *Parmley v. Pleasant Valley Coal Co.*, 64 Utah 125, 228 P. 557, 558 (1924) (" 'When the death of a person not a minor is caused by the wrongful act or neglect of another, his heirs, or his personal representatives *for the benefit of his heirs*, may maintain an action for damages against the person causing the death, or, if such person be employed by another person who is responsible for his conduct, then also against such other person.' " (quoting UTAH Comp. Laws § 6505 (1917))).

1. UTAH CODE ANN. § 78–11–6 (Supp.2006). As noted above, this statute has been renumbered and substantively altered since the relevant events. *See supra* ¶ 1 n. 1.

is wrong because (1) the plain meaning of "minor child" does not include a fetus, (2) a wrongful death cause of action may only be recognized through clear legislative direction, and (3) a construction of "minor child" that encompasses an unborn fetus creates absurd results under our laws.

## I. THE PLAIN MEANING OF "MINOR CHILD" DOES NOT INCLUDE AN UNBORN FETUS

¶ 28 At the time of the relevant events, Utah Code section 78–11–6 provided that "a parent or guardian may maintain an action for the death or injury of a *minor child* when the injury or death is caused by the wrongful act or neglect of another." [2] The majority concludes that the meaning of "minor child" in section 78–11–6 creates a cause of action for the wrongful death of a fetus.[3] I disagree.

¶ 29 Plain language analysis has two essential characteristics: (1) the definition of the term at issue must be accessible to the average English speaker[4] and (2) the "plain" definition must actually be used by English speakers.[5] The majority's definition fails on both counts. First, its definition is within the easy reach only of persons with an interest in wrongful death jurisprudence. More critically, the majority's definition of "minor child" is *never* used by English speakers in day-to-day conversation.

¶ 30 I challenge the assertion in Chief Justice Durham's opinion that "minor child" "in general usage ... may refer to ... a fetus."[6] We previously recognized that the scope of the term "child" mandates an independent existence from a mother in *Alma Evans Trucking v. Roach.*[7] In that case, we held

that a fetus was not yet a child for purposes of death benefits, and stated:

> We believe that the legislature used the word "child" in its *ordinary and usual sense, viz., a child which has been born.* ... Until the child is born, it is usually referred to as a child in utero or a fetus. While the legislature ha[s] the power to award benefits to a child in utero, it clearly did not do so. It limited its award to children.... The unborn child in the instant case was [not] ... a "child" until she was born.[8]

¶ 31 I concede that the definition of a word used in one context may be simply wrong when used in other contexts. Thus, as an academic matter, the definition of "child" used in *Alma Evans Trucking* might, in fact, include a fetus in another context. But in *Alma Evans Trucking*, we determined that, absent specific evidence to the contrary, the definition of "child" in any context means a person who has been born. This is the "ordinary and usual" definition. To conclude that "child" means "fetus" is to adopt a definition that is both out of the realm of the ordinary and the usual.

¶ 32 Contrary to Chief Justice Durham's assertion regarding the general usage of the term, I believe that our State's populace would find the reference to a fetus as a "minor child" quite bizarre. In fact, the usage of "minor child" to refer to a fetus is far from being general. It is unique. It is usage specific to anti-abortion political rhetoric—an issue with which we are not concerned here.

¶ 33 Chief Justice Durham's opinion fails to observe that "our plain language analysis is not so limited that we only inquire into

---

**2.** Utah Code Ann § 78–11–6 (emphasis added).

**3.** *See supra* ¶ 2.

**4.** *Salt Lake City v. Ohms*, 881 P.2d 844, 850 n. 14 (Utah 1994) ("The rule which should be applied is that laws, and especially foundational laws ..., should be interpreted and applied according to the plain import of their language as it would be understood by persons of ordinary intelligence and experience." (internal quotation marks omitted)).

**5.** *O'Dea v. Olea*, 2009 UT 46, ¶ 32, 217 P.3d 704 ("When discerning the plain meaning of the statute, terms that are used in common, daily, nontechnical speech, should, in the absence of evidence of a contrary intent, be given the meaning which they have for laymen in such daily usage." (internal quotation marks omitted)).

**6.** *See supra* ¶ 10.

**7.** 714 P.2d 1147 (Utah 1986).

**8.** *Id.* at 1148 (emphasis added).

individual words ... in isolation." [9] Instead, the opinion parses the word "minor" from "child" and proceeds to analyze each word independently.[10] The majority concludes that the only purpose of the word "minor" when used in combination with "child" is to fix an upper age limit beyond which one is no longer a "minor child." [11] Paradoxically, the majority declares that the word "child" has no lower age-limit.[12] Thus, reasons the majority, when the two words are combined, "minor child" is merely a temporal definition that means "beginning at conception" and enduring until the statutory age of majority.[13]

¶ 34 I am troubled by Chief Justice Durham's reliance on, what is in my view, a peculiar dictionary definition of "child" that extends childhood to a pre-viable fetus. Recently there has been much discussion about how we, as a court, go about the important work of ascertaining whether a word or phrase is "plain" and, if it is, how we come to know what it means. While dictionary definitions may be a useful starting point in plain language analysis, they are not determinative, and their use should not be indiscriminate.

¶ 35 The need for caution against overreliance on dictionaries found support in the June 13, 2011 edition of the New York Times. In an article by Adam Liptak titled Justices Turning More Frequently to Dictionaries, and Not Just For Big Words, the Times recounts the growing appearance of dictionary definitions in United States Supreme Court opinions.[14] Ironically, Mr. Liptak cites a 1988 survey of the lexicographic staffs of five publishers who concluded that the press is "the single most powerful influence in constituting the record of the English lexicon." While it would not be appropriate to place great reliance on the New York Times' usage of "minor child" or "minor children," given the press's influence on dictionary definitions, it merits noting that since 1851, the term "minor child" has appeared in the pages of the Times 2,886 times without ever referring to a fetus.

¶ 36 When "minor child" is properly read as a "harmonious whole," [15] it becomes clear that the term comprehends something more than a time period. Instead, "minor child" must necessarily include a child—an independent being capable of life outside of its mother's womb. Only after establishing this independent existence may a child's minority begin. Until that point, a fetus's fate is unquestionably tied to that of its mother, and, so too, its recognition as a separate being. I believe that "minor child" is a commonly understood term that contemplates a child born and capable of a separate existence, and I see no reason to depart from that general usage here.

## II. A WRONGFUL DEATH CAUSE OF ACTION SHOULD BE EXTENDED TO AN UNBORN FETUS ONLY UPON CLEAR LEGISLATIVE DIRECTION

¶ 37 Because I conclude that "minor child" is not synonymous with fetus, I find it improper for the majority to stretch the meaning of this term to create a cause of action for the wrongful death of a fetus. The State has a legitimate interest in protecting the "life of [a] fetus that may become a child." [16] Yet, there is a distinction between fetus and child, and while the former may develop into the latter, neither encompasses the other. Despite this distinction and without any discussion of viability, the majority's interpretation of "minor child" expands childhood to encompass embryos that are incapable of an

9. Anderson v. Bell, 2010 UT 47, ¶ 9, 234 P.3d 1147.

10. See supra ¶¶ 10, 24–26.

11. See supra ¶¶ 10, 24–26.

12. See supra ¶¶ 10, 24–26.

13. Supra ¶ 14.

14. Adam Liptak, Justices Turning Frequently to Dictionaries, and Not Just For Big Words, N.Y. TIMES, June 14, 2011, at All.

15. Anderson, 2010 UT 47, ¶ 9, 234 P.3d 1147 (quoting Sill v. Hart, 2007 UT 45, ¶ 7, 162 P.3d 1099).

16. See Planned Parenthood v. Casey, 505 U.S. 833, 846, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992).

independent existence and life. However, this policy determination should be left to the legislature to explicitly so provide.[17] Our expansion of the term "minor child" to encompass such an interest is unwise and unwarranted.

¶ 38 Our legislature has proven to be very adept and conscientious in making its intentions clear when its goal is to expand and protect the interests of fetuses. When that is the objective, our legislature unambiguously refers to "unborn" and not to "minor" children. Given this explicit difference and advised choice of words, it is by no means evident to me how reliance on Utah's Criminal Code, and in particular its commitment to protect the "unborn," helps answer the question of whether "minor child" includes a fetus in the context of Utah's wrongful death statutes.[18] While a cause of action for the wrongful death of an unborn child may "fall[ ] in line" with other policies explicitly provided for by the legislature,[19] this supposition does nothing to inform our interpretation of the unequivocally distinct language contained in our wrongful death statute.

¶ 39 I am reluctant to make this point. I recognize that on occasion our legislature unintentionally creates ambiguities in statutes by not clearly stating its intentions in statutory text. But it is dangerous for us to interpret a statute in a way that assumes that had the legislature drafted the statute correctly, it would have manifested our intention at the expense of another. We do not interpret statutes by assuming which rights the legislature should want to protect. The more principled and prudent approach would be to interpret "minor child" in a manner that does not create new causes of action and to thereby alert the legislature to the interpretive dilemma and invite a legislative response. However, until the legislature acts to provide a different direction, we are bound by the language contained within the statute, which indicates that a wrongful death action may be maintained on behalf of a "minor" but not an unborn child.

## III. CONSTRUING "MINOR CHILD" TO INCLUDE A FETUS LEADS TO ABSURD RESULTS

¶ 40 I find no principled way to interpret "minor child" to include a fetus, and doing so affects not only the statute at issue, but also a vast swath of other Utah laws. Attempting to avoid the implications of construing "minor child" as including a fetus, the majority asserts—that such an interpretation yields no absurd result.[20] It claims that such an approach is justified because "the legislature has adopted different formulae [for defining 'minor child'] in different statutes."[21] I disagree. The majority cites no evidence that the legislature intended such an unreasonably expansive definition of "minor child" in our wrongful death statute as opposed to the

---

**17.** Only six states extend liability for the wrongful death of a pre-viable fetus. They include Georgia, Illinois, Louisiana, Missouri, South Dakota, and West Virginia. With the exception of West Virginia, each state has done so pursuant to express legislative direction. *Compare Farley v. Sartin*, 195 W.Va. 671, 466 S.E.2d 522, 534 (1995) (construing statute that permits recovery for the wrongful death of a "person" to include the wrongful death of a nonviable unborn fetus), *with* 740 ILL. COMP. STAT. 180/2.2 (2010) ("The state of gestation or development of a human being ... at death, shall not foreclose maintenance of any cause of action ... arising from the death of a human being caused by wrongful act, neglect or default."), *and* S.D. CODIFIED LAWS § 21–5–1 (2010) (allowing a cause of action "[w]henever the death or injury of a person, including an unborn child, shall be caused by a wrongful act"), *and Porter v. Lassiter*, 91 Ga.App. 712, 87 S.E.2d 100, 102 (1955) (allowing parent to recover for the "homicide of a child" when "child" is statutorily defined as a fetus that is

" 'quick' or capable of moving in its mother's womb"), *and Danos v. St. Pierre*, 402 So.2d 633, 638 (La.1981) (allowing cause of action for wrongful death of fetus supported by legislative instruction that "a human being exists from the moment of fertilization and implantation"), *and Connor v. Monkem Co.*, 898 S.W.2d 89, 91 n. 6 (Mo.1995) (construing wrongful death of a "person" to include that of a fetus where the state constitution provided that "laws ... shall be interpreted and construed to acknowledge on behalf of the unborn child at every stage of development, all the rights, privileges, and immunities available to other persons").

**18.** *See supra* ¶ 12.

**19.** *See supra* ¶ 12.

**20.** *See supra* ¶¶ 11, 26

**21.** *See supra* ¶¶ 11, 22 n. 6.

term's supposedly more limited use in other contexts. Moreover, even the legislature's ability to vary the meaning of a word is bound by the rational limits of the English language. Otherwise, the law as expressed by language would be rendered meaningless, and our interpretive tool of plain language analysis would be useless.

¶ 41 The purpose of our plain language analysis is to give effect to legislative intent as expressed by language according to its common and ordinary usage.[22] When a term is ascribed its plain, common, and ordinary meaning, there is a presumption that the term is similarly understood in other contexts. Yet when the majority's interpretation of "minor child" is imported to other statutes utilizing the same term, the absurdities abound.

¶ 42 For example, Utah's law governing property and homestead rights of married individuals states:

> Neither the husband nor wife can remove the other or their children from the homestead without the consent of the other, ... and if a husband or wife abandons his or her spouse, that spouse is entitled to the custody of the *minor children,* unless a court of competent jurisdiction shall otherwise direct.[23]

¶ 43 Under the majority's interpretation of "minor child," woe to the pregnant woman who abandons her husband and thereby must surrender her fetus and, presumably, adjacent anatomical structures to the custody of her husband. Given that a fetus does not have a separate existence outside the womb until birth, custody of the "minor child" could not be secured without granting a father custody of the womb in which it resides.

¶ 44 A similarly absurd result would occur under the Public Safety Retirement Act. Section 49–14–503(1) states that "[i]f an inactive member who has less than 20 years of public safety service credit dies ... if there is no spouse at the time of death, the member's

*minor children* shall receive a refund of the member's member contributions or $500, whichever is greater." [24]

¶ 45 An absurd interpretation of this statute arises in the hypothetical circumstance where an active member dies after impregnating a woman not his spouse. If "minor child" is construed to include a fetus, a decedent's fetus carried by a woman not married to the decedent would be entitled to a refund of the decedent's contributions to the retirement fund. This would be the case whether or not the fetus was actually born and could potentially create an estate subject to probate for a fetus that does not survive full-term, but dies sometime between conception and birth. The idea that an unborn fetus can own property or may have an estate subject to probate even though the fetus was never born is unprecedented in our case law.

¶ 46 I do not cite these examples for the purpose of commenting on the underlying policy, nor "to preserve consistency across various volumes of state code." [25] Rather, I cite these curious scenarios as a means of demonstrating that Utah law has, to this point, never considered the usual meaning of "minor child" to include a human embryo from the time of conception. In contrast, assigning "minor child" its ordinary and common meaning of a child born alive works no absurdity.

¶ 47 Justice Lee's opinion asserts that the statute provides perverse incentives and functions absurdly if it disallows a parent to recover for the death of a fetus but allows recovery for prenatal injuries to a child born alive.[26] While this may or may not be true, policy as expressed in legislative language and the weighing of the incentives it creates is not this court's prerogative. We are tasked with construing statutes as written, according to the ordinary and common meaning of the language used. If the legislature intends to protect the rights of a fetus, it certainly has the linguistic skills to do so.

---

22. *Anderson v. Bell,* 2010 UT 47, ¶ 9, 234 P.3d 1147.

23. Utah Code Ann § 30–2–10 (2007) (emphasis added).

24. *Id.* § 49–14–503(1) (Supp. 2011) (emphasis added).

25. *See supra* ¶ 22 n. 6.

26. *See supra* ¶ 22.

However, interpreting "minor child" to achieve that goal strains the rational limits of the English language.

## CONCLUSION

¶ 48 Because the plain meaning of "minor child" contemplates only a child that has been born, I would not extend a claim for wrongful death to a fetus. If the legislature chooses to provide such a cause of action, it has the power to do so. But it has not done so here. The legislature did not contemplate "minor child" to include a fetus as evidenced by the term's use throughout our laws and the absurd results that such an interpretation would create. It is not this court's role to expand the law's reach as means of rectifying what may be deemed perverse incentives or bad policy.